## The Town of Hamden *vs.* Rice.

A devise of land to a town. directing " all the interest thereof to be laid out in repairing highways and bridges yearly, and not to be expended for any other use," is a devise for a public and charitable use, and is valid under the statute, relating to lands given for public uses. (Rev. Stat. Tit. 29, Ch. 1, § 3.)

The Act, restricting tenants for life from committing waste, passed in 1840, (Rev. Stat. Tit. 1, Ch. 15, § 284,) embraces tenancies for life, created by will.

Where, in an action on the case, in the nature of waste, it was found that the land in question was damaged by cutting and carrying away forest trees, which were of the value of $253.50, it was held that this constituted a sufficient injury to sustain such action, but that the plaintiffs should recover only to the extent of the damage to their specific estate.

THIS was an action on the case, in the nature of waste, brought by the town of Hamden against Lemuel Rice, for cutting and carrying away trees from a certain tract of land lying in said town.

In their declaration, the plaintiffs alleged that they were the owners in fee of the reversionary estate and interest in said premises, which were the same that formerly belonged to Enos Brooks, deceased, and that Roxana Brooks was, and now is, tenant thereof, having the use and improvement thereof only during her life.

The defendant pleaded the general issue, and the cause came on for trial, at the term of the superior court, holden in October, 1855, when, by agreement of the parties, the court found the following facts, and reserved the case for the advice of this court.

The plaintiffs claimed title to the land in question, as devises under the last will and testament of Enos Brooks deceased. The material part of said will is as follows : " I give to my wife, Roxana Brooks, the use and improvement of all my estate, both real and personal, during her natural life. At her decease, I give the whole of my estate, above mentioned, after all debts are paid, both real and personal, to the town of Hamden, and all the interest of said property

The Town of Hamden *v.* Rice.

to be laid out in repairing highways and bridges yearly, and not to be expended for any other use."

After the death of the testator, his widow, Roxana Brooks, took possession of the premises, as tenant for life under said will.

It was further found that the defendant had, at divers times, mentioned in the declaration, by the permission and consent of said Roxana Brooks, having purchased of her, cut and carried away from said land, divers forest trees thereon growing, and sold the same to divers purchasers; and the damage done to said land by the acts aforesaid of the defendant, the court found to be two hundred and fifty-three dollars and fifty cents.

*Baldwin,* and *R. I. & C. R. Ingersoll* for the plaintiff.

I. Although by the common law, as is recognized in this state, in the case of *Moore* v. *Ellsworth,* 3 Conn. R., 483, a tenant for life, unless of an estate created by law, was not liable for waste, the law was altered at a very early period in Great Britain by the statutes of Marlbridge 52, Hen. 3, and of Glocester 6, Edward 1; and in this state by the statute of 1840.

The statute of 1840 (p. 150) enacts, that "every person, who, having no greater interest in real estate than an estate for years, or life, created by the act of the parties and not by the act of the law, shall commit waste upon the premises, beyond what tenants for years, or life, created by operation of law may do, shall be liable to the party injured, &c., unless he is expressly authorized by the contract under which such interest is created, to do the acts complained of." Roxana Brooks, under whom the defendant justifies, had "no greater interest in the land wasted than an estate for life, created by the act of the parties, and not by the act of the law." It was created by the act of the devisor, assented to by her at his decease, when the devise became operative, and she became thereby a purchaser of the estate for life.

The defendant claims that the statute of 1840 has respect only to conveyances by deed, because there is an exception in favor of tenants, who are "expressly authorized by the contract, under which such interest is created." But the liability for waste, by the words as well as by the equity of the statute, extends to all tenants for years of life, (other than such as were liable at common law,) unless authorized by the contract, &c. The statute, while it recognizes the right of the party creating the estate to authorize the commission of waste, obviously is based on the assumption that, from the limited duration of the estate of the tenant, such an authority ought not to be inferred. It presumes that an individual, creating such an estate, does not intend to confer a power, which the law withholds from tenants of a similar estate of its creation. There can be no reason why any different presumption should be made in favor of a devisee, than of a grantee by deed, of an estate for years, or for life. The statute had regard to the amount of interest only: " having no greater interest," &c., and must have been designed to place tenants of similar estates, however deprived, *prima facie*, on the footing of tenants by aid of the law.

Such has been the construction of the English statutes of Marlbridge and Glocester. The statute of Marlbridge 52, Hen. 3, Ch. 23, (see Bacon ab. waste A,) enacts that " farmers during their terms, shall not make waste, sale nor exile of house, woods and men, nor any thing belonging to the tenements that they have to farm, unless they have special license by writing of covenant, mentioning that they may do it." This statute, by the language used, includes within its words only such as are lessees for term of life or years. 2 Inst. 145. It was doubted, whether the tenant by the courtesy (not being a farmer, i. e. a lessee,) was intended to be restrained either by the common law or by the statutes, as his estate came into existence, by having issue during the life of his wife, so that, at its origin, he had power to commit waste. He was, however, expressly restrained by Stat.

The Town of Hamden *v.* Rice.

of Glocester 6 Edw., 1 Ch. 5. But neither of those statutes expressly mentioned devisees for life. The general statute of devises was not enacted till the 32 Hen. VIII. They were only allowed at that time, except in Kent, and in some ancient boroughs and manors. Yet it was holden that a devisee for life, though not expressly mentioned, was punishable for waste, as being within the equity of the statute. Bac. ab. Waste, H. pl. 12. " The writ against a devisee may suppose it *ex legatione,* for it is within the equity of the statute." Br. Waste, pl. 132. And such is the law of England to this day, though devisees are not mentioned in any statute regarding waste. When it is intended the devisee for life shall have power of committing waste, it is usual in devises to confer it in terms. See Ambl. 504; 1 Cruise Dig. 85, 86. There was no necessity in our statute to mention them in the exception, because the power of the devisor over his estate, conferred on him by the statute of wills, would necessarily enable him to enlarge at his pleasure the power of his devise for life.

II. If we take the ordinary rules of interpretation, the general prohibitory words in this statute guide us but to one conclusion; and although the word " contract" may ordinarily have a more restricted signification, yet it cannot control the larger expressions of the prohibition. Dwar. on Stat. p. 704, (side.) " And when words are at the beginning of a sentence they may govern the whole," &c. Dwar. same page.

*Beach* and *C. Ives,* contra.

I. The town of Hamden has no title to the property, where the alleged waste was committed. The will attempts to vest in the plaintiffs an inalienable estate in perpetuity. 2. The repairing of highways and bridges is not a public and charitable use, within the meaning of our statute. It must be both public, and charitable, to be valid. 3. A devise to a charitable use, to be valid, must be made to a permanent corporation, capable of taking and discharging the trust. A

town is only a *quasi* corporation. Its limits, and therefore its identity, may be changed at every session of the legislature. 4. The devise is indefinite, uncertain and therefore void. It does not specify the location of the roads and bridges to be repaired.

II. The facts, found by the court, impose no liability upon the defendants. 1. It must be conceded that, prior to the statute of 1840, the action could not have been sustained. *Moore* v. *Ellsworth*, 3 Conn. R., 483. *Randal* v. *Cleveland*, 6 Conn. R., 329. 2. The statute, in restricting tenants for life, created by acts of the parties, refers to tenancies created by contracts in the nature of leases. 3. Here the only question is, what was the intention of the testator? and it is evident his intent was that his widow should derive her support from the use and improvement of the estate, without impeachment of waste. *Wilford* v. *Rose*, 2 Root., 20.

III. In order to constitute waste there must be some permanent, lasting injury done to the reversionary estate. 2 Bl. Com., 284. There was no fact in this finding from which the court can infer such damage.

IV. It does not follow because damage to the amount of $253.50 has been done to the land, that the reversionary interest of the plaintiff therein has been injured to this extent.

ELLSWORTH, J. It has been objected to the plaintiffs' right to recover, that they have no title to the premises in question, because the property is given in perpetuity, and is inalienable. By our statute, respecting lands, Tit. 29, Ch. 1, § 3, p. 629, it is provided "that lands, tenements, or other estates, that have been or shall be given, or granted, for the maintenance of the ministry &c., and for any other public and charitable use, shall forever remain to the uses to which they have been or shall be given or granted." The gift, in this instance, is in these words; " all the interest of said property to be laid out in repairing highways and bridges annually, and not to be

expended for any other use." We do not stop to consider whether the words "public," and "charitable" as used in the statute, do not mean substantially the same thing; for we are satisfied that this devise is, in its character, both public and charitable. The object of the devise is to confer a public benefit; something beneficial and necessary to all persons indiscriminately, quite as much as gifts to institutions for learning, or religion, or to the poor and helpless. Besides, the word "charity" had, at the time this statute was passed, a well known and acknowledged meaning in the English courts, for we find its use in statutes as early as Elizabeth, if not before, and certainly earlier than the settlement of this country. Grants to support bridges and highways were held not to be within the statutes of mortmain of Henry VIII., because of their public and charitable' character, as we learn from Porter's case, 1 Coke, 26, to which case Lord Coke adds this note; "that any man at this day may give lands, tenements and hereditaments to any person &c., for the finding of a preacher, maintenance of a school, relief and comfort of maimed soldiers, sustenance of poor people, reparation of churches, bridges, and highways, for education and preferment of orphans," &c. These are all the classes of uses which the statute names. Whatever obscurity may rest on the law of public charities, before the statute of Elizabeth, that statute is now considered the principal source of legal charities and has become the general rule of charities so that no uses in England are to be considered charitable and entitled, as such, to the protection of the law, except such as fall within the words, or obvious intent, of the statute. Sir William Grant has observed that the word "charity" in its widest extent, denotes all good affections men ought to bear towards each other, and in its most restricted and common sense, relief of the poor. For in neither of these senses is it employed in the court of chancery; there, its signification is chiefly derived from the statute of Elizabeth. See a very learned note, in the appendix to 4 Wheat., § 1. The same

doctrine is laid down by the Master of the Rolls in *James & wife* v. *Allen, al.* 3 Mer. R., 16—so in Com. Dig., under tit. "charitable uses," no. 1. bridges, ports, havens, causeways, churches, sea banks, and highways, are classed, and grants for them are permitted as public charities. The same classification exists in 2 Sto. Eq., p. 390, § 1138—p. 411, § 1161. In *Cogshall* v. *New Rochelle*, 7 John. Ch., Chancellor Kent decided, that a legacy for the purpose of erecting a town house for transacting town business, was a charitable bequest.

In several of the states, the statute of Elizabeth has been recognized in their courts as the law of public charities, as may be learned from the appendix in 4 Wheat., and from the case of *Vidal & al.* v. *Girard's Executors*, 3 How., 150. Upon the most careful examination and reflection, we cannot entertain a doubt, whether we look at the principle of the cases, or the settled law in England, or the decisions in this country, that the use in question is one of a public and charitable character, which our statute allows to be continued in perpetuity.

It is further said, that the statute law of 1840, p. 150, does not extend to an estate, held by such a 'title as the one in question, and therefore the tenant for life is not liable for waste to the remainder man. It is certain, that Mrs. Brooks, under whom the defendant defends, has a clear life estate in the premises and nothing more, and if this were all, the defendant has a perfect defence to the action. But this estate of hers is created by the act of the parties, and is not an estate created by the act of law, as an estate by curtesy, or dower ; and therefore it becomes necessary for the defendant to show that Mrs. Brooks is authorized by the devise, under which she has her estate, to do these acts which otherwise would be waste by the statute. But this is not attempted to be done, and the only defence made is, the devise is not a contract, under which she holds her interest; so that a will, which we know, is the most usual mode of creating a life

estate, is just the very mode that is not reached by this statute of 1840.   This would be strange indeed and, we should exceedingly regret to be compelled to give our sanction to this construction of the law.   Besides it is an elementary principle that estates accrue to the owner, by act of the law, or by purchase, and as this estate did not accrue by the former, it did by the latter.   We think if Mrs. Brooks does not hold, as a purchaser, she does not hold at all, and if by operation of law, then certainly she cannot commit waste.

It is again said, that the case made for the advice of this court, does not show that any injury has been done to the freehold, or the remainder which is vested in the plaintiffs. On this point, it is certain that the facts are not as fully presented as they might and should have been, but the object of appealing to this court is for a totally different purpose, or the case would never have been brought here; for if it be true that the interest in the remainder is not injured, the plaintiff can have no action at all, and why, then, is this point of law raised for the advice of the court?   It appears that the defendant has purchased, and cut, and removed from the land, divers forest trees thereon growing, of the value of $253.50. This constitutes an injury to the remainder, and is enough to sustain the allegation of waste and injury to the land.   As however, it is possible that the attention of the court was not called to an apportionment of the injury between the two interests in the estate, the life estate, and the remainder, we shall advise the superior court to re-examine this point, and allow the plaintiffs to recover, only to the extent of the injury to their specific interest.

We therefore advise the superior court to render judgment for the plaintiffs.

In this opinion, the other judges, STORRS, & HINMAN, concurred.

Judgment for the Plaintiffs.