<hr/>

### MATILDA LYON vs. SILAS W. ROBBINS AND ANOTHER.

A widow owning a life estate under the will of her husband in certain lands, joined with a part of the reversioners, all of whom were tenants in common, in making a mortgage by metes and bounds of a portion of the lands, the mortgage note being signed by them jointly, and the money obtained on the mortgage being used by the life tenant in repairs on the premises. The other mortgagors afterwards sold their interests in all the lands to R. The mortgagee afterwards brought a bill of foreclosure against R and the life tenant,

and after the foreclosure became absolute by a failure to redeem R purchased the interest of the mortgagee, paying him therefor the amount of the mortgage debt and costs.    The life tenant afterwards brought a bill in equity against R, alleging that she had no notice of the foreclosure proceedings, and praying to be allowed to redeem on paying to R what he had paid the mortgagee, with interest, which right was decreed to her.    She afterwards paid the amount to R, and then, after demand made, brought a bill in equity to compel R to contribute towards the amount paid by her in redeeming or be foreclosed of all right to redeem his interest in the land.    Held—

1.  That R could not set up the fact that the mortgage was void, the court in the first bill of the petitioner against him having found the fact of the mortgage and of the amount due under it, and having therefore necessarily found its validity.

2.  That although the first bill of the petitioner against R could have been so framed that the whole question between the parties could have been settled by a single decree, yet the fact that she had brought that bill and obtained a decree under it did not preclude her from bringing the present bill, the objects of the two bills being entirely different, although the general facts alleged were the same.

3.  That it could not be presumed that the petitioner as tenant for life was liable for waste, nor that any waste had been permitted by her, nor that the money was expended for repairs which she was required to make.

A tenant in common of an equity of redemption, if he redeems, must pay the whole mortgage debt, and can not compel the mortgagee to accept such portion of the mortgage debt as is represented by his interest in the land.

And having paid the whole mortgage debt he has no right of contribution against his co-tenants personally, but his only remedy is by a foreclosure of their interests in the land if they fail to pay their share; and they have the option to pay or give up their interests.

BILL IN EQUITY for a contribution and foreclosure; brought to the Superior Court in Hartford County.   The principal allegations of the petition were as follows:—

That the petitioner since the year 1864 has been and still is seized for the term of her natural life, by virtue of the last will of her late husband, Ezra Lyon, of the following piece of land with the buildings thereon standing, to wit: [describing it;] that by virtue of said will each of the five children of the said Ezra was seized and possessed of one undivided fifth part of all the real estate of the said Ezra, including the piece above described, subject to the life estate of the petitioner; said children being George F., John M., James A., Mary W., and Sarah Lyon; that on the 28th day of February, 1866, the petitioner, together with the said George F., John M., and James A. Lyon, was indebted to Samuel A. Castle in the

sum of $400 by their promissory note of that date, signed by them jointly; to secure the payment of which the petitioner, with the said George, John, and James, executed on that day a conveyance of all their respective interests in said described tract of land, by one and the same deed of mortgage; that said sum of four hundred dollars was borrowed and used for the purpose of making repairs upon said premises so mortgaged; that on the 5th day of March, 1866, the said George conveyed all his interest in all the estate so received by him from the said Ezra, including the piece described above, to Silas W. Robbins; and on the 24th day of December, 1866, the said John conveyed all his interest in the estate received by him from the said Ezra, including the piece described above, to Henry C. Dwight; that on the 19th day of February, 1873, the note being then due and unpaid, said Castle brought his bill of foreclosure against the petitioner, the said James A. Lyon, and the said Robbins and Dwight, to the March term, 1873, of this court, alleging the non-payment of said note, and praying that unless this petitioner or said James or said Robbins or said Dwight should pay the same within such time as the court should limit, they and each of them should be forever foreclosed of all equity to redeem said mortgaged premises; and said court did at said March term find that there was then due said Castle on said mortgage the sum of $571.20, and ordered and decreed that unless the petitioner or the said James A. Lyon should pay said sum and interest, with the sum of $33.81 taxed as costs on or before the 23d day of June, 1873, they should be forever foreclosed of all equity to redeem said mortgaged premises; and that unless said Dwight should pay said sums on or before the 9th day of July, 1873, he should be foreclosed in like manner; and that unless said Robbins should pay said sums on or before the 16th day of July, 1873, he should be foreclosed in like manner. And the petitioner says that neither the said James A. Lyon, the said Robbins; or the said Dwight, paid said sums within the times limited, although each of them had due notice of the bringing of said petition, and said Robbins and Dwight were present in answer thereto by their counsel; and

this petitioner did not pay said sums within the time limited, nor did she have any notice whatever of said petition until after the title to said premises had become absolute in said Castle. And said Castle recorded his certificate of foreclosure in the records of said Wethersfield on the 30th day of August, 1873, and on the 27th day of said August sold and conveyed to said Robbins the premises so foreclosed; and said Robbins on the 22d day of September, 1873, conveyed one undivided half of said interest so obtained to the said Dwight. And the petitioner says that, having discovered the foreclosure by said Castle, she brought her petition to the December term, 1873, of this court, therein alleging the foregoing facts, and praying that said decree be re-opened as to her alone, and that she be allowed to redeem said premises on paying to said Robbins and Dwight such sum as said Robbins had paid to said Castle as aforesaid and the interest thereon. And said court, at its January term, 1875, to wit, on the 1st day of February, 1875, did find said facts and that the sum paid by said Robbins to said Castle, with interest thereon to said 1st day of February, amounted to $732.68, and thereupon did decree that this petitioner be allowed to redeem said premises on paying to said Robbins and Dwight said sum of $732.68 on or before the first Monday of May, 1875, with the interest thereon accruing from said 1st day of February; as will more fully appear from the petition, finding of the committee, and the decree of the court thereon, to be shown in court. And the petitioner says that before said first Monday of May, to wit, on the 19th day of April, 1875, she paid to said Robbins and Dwight said sum of $732.68, together with the interest thereon, and so has redeemed said mortgaged premises, but that she has no further title or evidence of title thereto than what is afforded by and exists in virtue of said last mentioned decree, to wit, a life estate therein. And during the pendency of said petition last above mentioned, the said James A. Lyon conveyed to the said Robbins and Dwight all his interest in said premises, so that the said Robbins and Dwight have now all the record title to said mortgaged parts of said premises, and are the owners thereof,

in equal and undivided portions, except so far as their title thereto is affected by said last mentioned decree, and your petitioner has only a life estate that she can claim absolutely. And your petitioner says that in order to redeem said mortgaged premises she has been at great expense, besides paying to said Robbins and Dwight a sum nearly double the principal sum of said note, although she was only one of four promisors thereon, and that said Robbins and Dwight stand in the places of the said George F., John M., and James A. Lyon, the other three promisors, and have the record title to the respective interests in said mortgaged premises as mortgaged by the said George F., John M., and James A. Lyon as co-promisors and co-mortgagors as aforesaid; and said Robbins and Dwight ought in equity to reimburse to your petitioner three-fourths of said sums she has so paid as aforesaid, or relinquish to her the respective interests they hold from said co-mortgagors. She therefore prays the court to inquire into the truth of the foregoing allegations, and on finding the same to be true, to order and decree that unless said Robbins and Dwight, or either of them, shall contribute and pay to your petitioner such equitable proportion of such sums so paid by her as aforesaid, within such reasonable time as this court shall limit and appoint, then they and each of them shall be forever foreclosed of all equity to redeem the interests so mortgaged and conveyed by said George F., John M., and James A. Lyon, and said several interests shall thereupon and forever thereafter be and remain vested absolutely in the petitioner.

The respondents demurred to the petition, assigning the following grounds of demurrer:—

1. That the mortgage deed set up in the petition is null and void, because it appears that at the time of its execution the petitioner and the five children of Ezra Lyon were tenants in common and as such owners in fee of the premises described in the mortgage, and of other separate and distinct pieces of land lying in this state, the petitioner owning a life estate in all the land and the five children owning all the land subject to said life estate. And said deed does not convey, and does

not purport to convey, more than one piece of said land, describing the same by metes and bounds, and is made by only a part of said tenants in common, the said Sarah never having sold or parted with her one-fifth interest in any part of the premises, but being still the owner of the same.

2. That the facts set up in the petition are the same facts set up in the former petition to this court against the present respondents, as appears by this petition and the prior petition of the petitioner, referred to and made part of this petition, and all the facts set up in this petition have been adjudicated, and a decree has been passed by this court in said prior petition covering all the facts and allegations in this petition, which judgment and decree are in full force, and form a complete bar to this petition.

3. That it appears that the petitioner, at the time of the execution and delivery of the mortgage deed and note, had a life estate in the premises described in the mortgage deed, and the buildings thereon, and that she was and is obliged by law to keep the buildings thereon in good and sufficient repair so as to prevent waste; and that it appears by said petition that said money for which said mortgage and note were given was used by the petitioner for the purpose of making repairs on said premises so as to prevent waste, and that said money was therefore had for her own use and benefit.

The court (*Martin, J.,*) held the petition insufficient, and dismissed it. The petitioner thereupon brought the record before this court by a motion in error.

*S. W. Adams*, for the petitioner.

The general rule being well settled, that where one of several co-mortgagors pays the common debt, the other co-mortgagors must contribute their proportion to the party paying, or relinquish to such party their respective mortgage interests, (1 Washb. R. Prop., book 1, ch. 16, § 5, art. 21, and § 8, arts. 9, 10,) what is there to make this case an exception to the general rule? The respondents' demurrer suggests three reasons:

1. They say that the mortgage deed referred to "was and

is null and void," because, they say, "it conveys but *one* piece of said land, being a part of said premises, describing the same by *metes and bounds.*" An examination of the record shows that it conveys only the "right, title and *interest*" of each mortgagor in the piece in question. No case can be found which denies the right of any tenant in common to convey his *interest* merely, in any property, real or personal. The cases of *Mitchell* v. *Hazen*, 4 Conn., 495; *Griswold* v. *Johnson*, 5 id., 366; *Merrill* v. *Berkshire*, 11 Pick., 269; *Porter* v. *Hill*, 9 Mass., 34; *Marshall* v. *Trumbull*, 28 Conn., 185, and *Hartford & Salisbury Ore Co.* v. *Miller*, 41 id., 112, are all cases where there was a sale by "metes and bounds," or else (as in the case of *Marshall* v. *Trumbull*, where the grantor *reserved a right of passway* from the undivided interest conveyed,) there was a conveyance which was construed to be the same in effect. Nothing is more common than for devisees to sell their *interest* in specific pieces before any distribution has been made, and before it is known what that interest may be. But even if the mortgage deed had been defective in that particular, it would have been good as against the *mortgagors;* they, and any holding under them, would have been estopped to deny that it conveyed their *interest.* Opinion of CARPENTER, J., in *Hartford & Salisbury Ore Co.* v. *Miller*, 41 Conn., 132, 133.

2. The respondents further say that "all the facts set up in this petition are the same as those set up in said prior petition, which have been *adjudicated*, and form a complete bar to this petition." Many of the "facts" stated in this petition were set up in the prior one, and were *found* by the court, and, to that extent, these facts may be said to be adjudicated. But, as the principal fact alleged in this petition (to wit, the redemption of the mortgage by the payment of the common debt,) has occurred since the prior petition was brought and disposed of, and it so appears from the record, it would seem to be an impossibility that the facts set up in this petition are "the same" with those set up in the first one. It is not claimed that the *prayer* of this petition is the same contained in the first one. That had reference only to

Lyon *v.* Robbins.

the *petitioner's* mortgage; this seeks a final disposition of *all* the mortgages.  *Dickinson* v. *Hayes*, 31 Conn., 423.

3.  It does not nor can it appear from the record, as the respondents say, that the petitioner "was and is obliged by law to keep the buildings in good and sufficient repair," whatever may be inferred therefrom as to her duty "to prevent waste."  Whilst a tenant for life, by act of the parties, may not *commit* waste, (Gen. Stat., 490,) it does not follow that the law casts upon such a tenant the obligation to "keep the buildings in good and sufficient repair."  This might be requiring an impossibility.  Previously to the statute of Marlbridge, it was only tenants made such by *operation of law* who were liable for waste at all (1 Washb. R. Prop., book 1, ch. 5, § 4, art. 1); and even now, the rule goes no further than to require such a tenant to use "*ordinary care*" to prevent buildings going to decay, and he is "not bound to expend extraordinary sums for that purpose."  Id., book 1, ch. 5, § 4, art. 31.  And, for aught that appears from the record, a great deal more may have been expended for the same purpose as this sum of $400.  Besides, presumptively, the other co-mortgagors were living in the same homestead, and hence any repairs would inure to *their* benefit as well as the petitioner's.  And as the respondents bought these mortgage interests within a few months after all the improvements were made, they must have received the full benefit of the cost of them.

*M. R. West*, for the respondents.

1.  A deed by one tenant in common by metes and bounds of one portion of the land or of his interest in such portion is void.  1 Swift Dig., 103; *Starr* v. *Leavitt*, 2 Conn., 243; *Mitchell* v. *Hazen*, 4 id., 495; *Griswold* v. *Johnson*, 5 id., 366; *Gates* v. *Treat*, 17 id., 392; *Marshall* v. *Trumbull*, 28 id., 185; *Marsh* v. *Holley*, 42 id., 453; *Porter* v. *Hill*, 9 Mass., 34; *Merrill* v. *Berkshire*, 11 Pick., 269; *Adams* v. *Briggs Iron Co.*, 7 Cush., 361.

2.  A former decree in a suit in equity between the same parties, and for the same subject matter, is also a good defence

in equity. 2 Story Eq. Jur., § 1523; 2 Swift Dig., 235. If the right has been decided, the judgment will be conclusive, though the cause of action in the former suit, and the object to be obtained by it, were different from those in the subsequent suit. 1 Swift Dig., 752; *Betts* v. *Starr*, 5 Conn., 550. The present petition, and the former petition and decree referred to and made part of it, show that the same subject matter between the same parties has once been passed upon by this court. Demurrer will lie for this. Story Eq. Pl., §§ 790, 791.

3. The money was borrowed by the petitioner and used for the purpose of making repairs upon the mortgaged premises. The court will presume that it was borrowed for the making of necessary repairs, so as to prevent waste. She was bound to keep the buildings and premises in repair. Gen. Stat., p. 490, sec. 9; 1 Swift Dig., 517; *Town of Hamden* v. *Rice*, 24 Conn., 350.

GRANGER, J. The first objection made by the respondents in this case to the relief sought by the petitioner in her bill is, that the mortgage to Castle was void, because it was a conveyance by metes and bounds, of a part of certain lands held by tenants in common, by a part only of the tenants in common.

Conceding the correctness of the general rule which makes such a conveyance void, yet we think the respondents stand in a position in which they can not be heard to make this objection.

Castle, the mortgagee, brought a bill for a foreclosure against the present respondents and petitioner. In that case the court found the fact of the mortgage and the amount due under it, and made a decree limiting the time for redemption. In this the court necessarily found, and established as between the parties to that proceeding, the validity of the mortgage. After the decree had taken effect the present respondents, Robbins and Dwight, purchased the title acquired by Castle by the mortgage and foreclosure, paying him the amount due under the mortgage and the costs; a mode of redemption

apparently arranged beforehand between these respondents and the mortgagee, the title being allowed to become absolute under the foreclosure for the purpose of cutting off all other claims. The present petitioner then brought a bill to redeem against Robbins and Dwight, averring that she had no notice of the petition for foreclosure, and offering to pay the amount paid by them to Castle with interest. Upon this bill the court found the facts as alleged, and passed a decree allowing the petitioner to redeem on making such payment. In this decree the court again found the existence and necessarily the validity also of the mortgage to Castle. Thus this very point, which the respondents now make, as to the validity of the mortgage, has been adjudicated not only in the foreclosure suit of Castle against the present respondents and petitioner, which would perhaps be conclusive against the respondents in the present suit, but again in the suit brought by the petitioner to redeem, in which case the parties were the same as in the present case. We think it clear therefore that the question can not be regarded as an open one in the present case.

The respondents make the further point that the matters set up in the present bill are to be regarded as having been adjudicated in her former bill.

It is to be observed that this question is not properly before us. The case stands upon a demurrer to the petitioner's bill. The respondents in their demurrer assign several causes of demurrer, in the form usually adopted in cases of special demurrer, while the causes assigned are wholly grounds of general demurrer, if they can be raised at all in that mode. Among these causes of demurrer there is assigned the fact of this former adjudication. But this fact does not appear on the record, and the demurrer can reach nothing that does not so appear. It is stated that the record of the former proceeding is referred to and made a part of the petition. This, however, is not so. The only allusion to that record is in the suggestion that it is ready to be produced in court. What it is, what its averments are, and what the precise relief sought, does not appear from the present petition.

But as this question may be raised in the case hereafter, we think it best to consider and decide it here.

The petition in that case set up the fact of the mortgage, the foreclosure obtained by Castle, the amount found due on the mortgage, the expiration of the time to redeem without redemption, the purchase of the mortgage title by the respondents for the amount of the mortgage debt, the failure of the petitioner to receive notice, and her equitable right to redeem the property out of the hands of the respondents by making to them the payment that under the decree she was required to make to Castle. Her present petition alleges the same general facts, and her payment to the respondents since the decree of the amount found to have been paid by them to Castle, with interest, as also her equitable right to a contribution from the respondents towards the amount which she had paid on redemption, and their refusal to make such contribution. Now it is very obvious that these two bills do not contain substantially the same allegations, nor seek substantially the same relief. The claim of the respondents therefore, that the two bills were for the same matter, so that the subject matter of the last petition is to be regarded as adjudicated in the former suit, has really no foundation.

But the real point, though not presented very clearly by the record, is, whether the proper time and place for the petitioner to seek the relief which she now seeks was not in the former suit. In other words, as she now seeks re-payment of three-fourths of the sum which she paid the respondents under the former decree, thus paying only one-fourth of the sum herself, was she not bound to ask in that suit for a redemption of her interest in the property, on paying this quarter, and not the whole?

We think that the petitioner might have so framed her bill in the former case that the court could have disposed of the whole question between these parties in that suit, and that it would have been better for her to have done so. But there is no rule which required her to present her present case to the court at that time. She did not in fact present it, nor seek the relief which she now seeks. If the relief now sought was such as was necessarily considered and passed upon in the former suit, her neglect to avail herself of that opportu-

nity to present her full case might have precluded a further hearing upon the matter. But not only was this not the case, but there are reasons why the rights of the parties may perhaps be dealt with more advantageously to both in the present than in the former suit. If in that suit she had offered to pay only her quarter of the mortgage debt and had sought to redeem only her life interest, she would have been leaving the respondents no option but to keep their reversionary interest and pay therefor the other three-quarters of the mortgage debt. But she had no right to thus compel them to pay the three-quarters. Any tenant in common redeeming the common property by paying a general incumbrance, can not redeem merely his share of the land held in common by paying his share of the incumbrance, but he can redeem only by paying the whole encumbrance, and then, standing upon that encumbrance, he can turn around and foreclose his co-tenants unless they will pay him their share. But his remedy is only by this proceeding of foreclosure. He has no claim which he can enforce against them personally. They have their option to pay or give up the land. This option can not be taken away. This point can be made clear by an illustration. A mortgagee of a piece of land we will suppose becomes by purchase a tenant in common with the mortgagor of the equity of redemption, each owning an undivided half. We will suppose the mortgage debt to be $2,000. If the mortgagor desires to redeem, he can not do so by tendering to the mortgagee $1,000 as his half of the mortgage debt, redeeming thereby his half of the land. The mortgagee is entitled to the whole amount of his mortgage, and the mortgagor, if he desires to redeem, must pay the whole encumbrance and redeem the whole land. When he has done this he can turn around and foreclose his co-tenant, the original mortgagee, unless he will pay him his half of the mortgage debt. But why is he compelled to do this, when it would seem so much simpler and more direct for him to have redeemed at first only his own half of the equity, leaving the mortgagee, who was also his co-tenant, to keep his half of the land and cancel a corresponding half of the mortgage? The

Lyon *v.* Robbins.

answer is, that by this latter course he would have been compelling his co-tenant to redeem his half of the land. This he can not do. The co-tenant has his option whether to redeem or let his interest as tenant in common go. No personal obligation rests upon him to redeem, or to pay any part of the mortgage debt. If the mortgagee were compelled to accept half the debt and keep half the land for the rest, it would be imposing upon him a personal obligation which does not exist. He therefore as mortgagee may demand of the mortgagor, on a redemption by the latter, the payment of the whole mortgage debt. This is his personal right. The duty afterwards of contributing towards the payment on the ground of his being also a co-tenant with the mortgagor, is a burden on the land alone, not a personal duty, and he must be left to exercise his own option as to whether he will pay the money and save his interest in the land, or refuse to pay and let his interest be foreclosed.

Now it may be that the mortgagor in his bill to redeem, in the case we are supposing, might so frame his bill that the court would consider the whole question between himself and his co-tenant, and decree that he should be allowed to redeem his half interest on paying half the mortgage debt, provided that the mortgagee in his character as co-tenant would consent to such partial redemption, but that if he would not so consent the mortgagor should pay the whole mortgage debt to the mortgagee, who should thereupon, in his character as co-tenant, become foreclosed of all right to redeem his interest in the land, which should thereupon become vested in the mortgagor. Such a decree is the only one that could possibly cover the whole case. It is complex and involves a contingency, and while it might be better that a single suit in equity should settle the whole question between the co-tenants in such a case, it is very clear that the mere fact that the mortgagor had brought merely a bill to redeem in the first instance, and had obtained a decree allowing him to redeem on paying the whole debt, would be no bar to a later bill, brought after such redemption, to compel the co-tenant to contribute or be foreclosed. The facts of the two cases would

be to a great extent the same,.except the important one of the payment alleged in the last bill of the whole mortgage debt by the mortgagor, but the relief sought in the two bills, and indeed the entire objects of the two bills, would be wholly different. One would be based upon and recognize the personal right of the mortgagee to full payment of the mortgage debt; the other would assert and be based upon the liability of the interest of the co-tenant in the land to be subjected to contribution toward the sum so paid.

We therefore regard the present bill as essentially different from the former one, and in no manner precluded by it.

The third point made by the respondents is, that it appears that the petitioner at the time of the execution and delivery of the mortgage had a life estate in the land and buildings described in the mortgage, and that she was obliged by law to keep the buildings in good and sufficient repair, so as to prevent waste, and that it appears by the petition that the money for which the note and mortgage were given was used by the petitioner for making repairs on the premises so as to prevent waste, and that the money was had for her use and benefit, and that therefore she is not entitled in equity to a contribution from the respondents on account of having paid the money. It is true that it appears that the petitioner had a life estate in the premises, and that the money for which the note and mortgage were given was borrowed and used for the purpose of making repairs upon the mortgaged premises; but it nowhere appears that any waste had been committed or suffered to take place by the petitioner, nor that the repairs were made to prevent waste; nor is it shown that the petitioner was obliged by law to keep the buildings in repair so as to prevent waste. She is not tenant in dower, but has a life estate in all the real estate of her deceased husband under his will. The finding of the committee in the former suit, which is referred to in the petition and printed with the case, is as follows on this point:—"The title to the whole of this land, including that described in the mortgage deed, was derived from her (the petitioner's) late husband Ezra Lyon, and the remainder of all said land, subject only to the life

estate of said Matilda, upon the death of said Ezra descended to and vested in the said George F. Lyon, John M. Lyon, James A. Lyon, Mary W. Judd, and Sarah Lyon, children and heirs-at-law of the said Ezra, in equal proportions as tenants in common, and has never been distributed." The estate of the petitioner was created by the act of the parties, and not by operation of law, (*Town of Hamden* v. *Rice*, 24 Conn., 356,) and whether the petitioner might or might not commit waste depends upon the terms of the will. She might have been authorized by the devise to do acts which otherwise would be waste by the statute. Rev. Statutes, p. 490, sec. 9; *Town of Hamden* v. *Rice*, supra. The will is not before us for construction, and we know nothing of its provisions except what appears from the above finding of the committee, and we cannot say that the petitioner was liable for waste. And it does not appear what was the nature of the repairs made. They might have been, and probably were, of such a character as to increase the value of the property and be of essential benefit to the reversioners; and this we think it is fair to presume was the reason why three of them joined with the petitioner in executing the note and mortgage.

None of the claims made by the respondents under their demurrer can be sustained by any principle of law or equity.

The bill of the petitioner is sufficient, and there is manifest error in the judgment of the Superior Court.

In this opinion the other judges concurred.