ANNE BARNETT ZAUNER *v.* LEONIE SULLIVAN
BREWER ET AL.
(14268)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued June 6—decision released August 20, 1991

*Lisa J. Damon,* with whom was *Gregory A. Hayes,* for the appellant (plaintiff).

*J. Michael Sconyers,* with whom were *Stuyvescent K. Bearns* and *Keith E. Krusz,* for the appellee (named defendant).

GLASS, J. In this will construction case, the plaintiff, Anne Barnett Zauner, challenges the judgment of the Superior Court in favor of the defendant, Leonie Sullivan (Walker) Brewer,[1] following the granting of the defendant's motion for summary judgment. Because we conclude that genuine issues of material fact exist as to the intended meaning of a disputed provision of the will of the testatrix, Virginia R. Ward, and as to whether the defendant had committed waste actionable by the plaintiff under General Statutes § 52-563[2] and subject to immediate relief in damages, we reverse.

The plaintiff was the wife and is the sole devisee of the testatrix' now deceased only son, John S. Barnett. The defendant was the wife of the testatrix' physician and friend, Eddie Brewer. The focus of the present dispute is a will executed by the testatrix in July, 1967,

---

[1] William Powell was also named as a defendant, but the action against him was later withdrawn. We will refer to Leonie Sullivan Brewer as the defendant throughout this opinion.

[2] "[General Statutes] Sec. 52-563. LIABILITY FOR WASTE BY TENANT FOR LIFE OR YEARS. Any person who, having no greater interest in real property than an estate for years, or for life, created by the act of the parties and not by the act of the law, commits waste upon the premises, beyond what tenants for years or life created by operation of law may do, shall be liable to the party injured in an action on this section, unless he was expressly authorized, by the contract under which the interest is created, to do the acts complained of."

which provided in article three for the disposition of a thirty-three acre parcel of property known as "Beaver Dam" (property). The property at that time consisted of a newly constructed house and recently landscaped grounds, as well as a clear and swimmable man-made pond complete with a boat house and dock for recreational purposes. Article three provided: "I devise to my friend, LEONIE SULLIVAN WALKER [BREWER], for and during the term of her natural life my residence real estate [the property] in the town of Salisbury, and, at her death, or if she surrenders the premises prior thereto, the remainder interest therein to my son, JOHN S. BARNETT."

Upon the testatrix' death in October, 1967, the defendant, in accordance with article three of the testatrix' will, entered into possession of the property and made her home there. The defendant resided on the property until September, 1988, when she purchased and began to occupy a home elsewhere and leased the property to a third party. To date, a third party remains in possession of the property pursuant to a lease executed by the defendant.

After learning of the defendant's leasing of the property, the plaintiff commenced this action in the Superior Court alleging that, under article three of the testatrix' will, such leasing constituted a "surrender" of "the premises" that entitled the plaintiff to immediate possession of and title to the property in fee simple. The plaintiff further alleged that by permitting the buildings and grounds of the property to become out of repair, the defendant had committed "waste" within the meaning of § 52-563 that had greatly diminished the value of the property. In addition to possession and title, the plaintiff sought relief in the form of money damages and "such other and appropriate equitable relief as the court may deem appropriate."

Upon completion of discovery, the defendant moved for summary judgment pursuant to Practice Book § 384 on the grounds that: (1) because the phrase "surrenders the premises" in the testatrix' will unambiguously meant the "yielding up of an estate for life or years to him who has an immediate estate in reversion or remainder"; Black's Law Dictionary (5th Ed.); she had not, as a matter of law, effected a "surrender" of "the premises" by leasing the property to a third party; and (2) the plaintiff could not maintain a claim of waste under § 52-563 because she had failed to allege that the defendant's waste had substantially and permanently damaged the property, and, alternatively, § 52-563 did not authorize relief in the form of damages for waste before the termination of the defendant's tenancy. After hearing the parties and considering the evidence proffered in support of their respective claims, the court rendered summary judgment in favor of the defendant.[3] The plaintiff then appealed to the Appellate Court, and we transferred the appeal to this court in accordance with Practice Book § 4023.

On appeal, the plaintiff argues that the trial court improperly determined that no genuine issue of material fact existed as to whether: (1) the defendant's leasing of the property constituted a "surrender" of "the premises" within the intended meaning of that phrase in the testatrix' will; and (2) the defendant committed waste actionable by the plaintiff and subject to immediate relief in damages under § 52-563. We agree.

---

[3] While the court confined its ruling on the defendant's motion for summary judgment to the plaintiff's claim that the leasing of the property constituted a "surrender" of "the premises" under article three of the testatrix' will, we treat the court's subsequent order denying the plaintiff's timely motion to open the judgment for the purpose of reinstating her claim of waste as an implicit rendering of summary judgment in the defendant's favor on the latter claim.

## I

The plaintiff first claims that the trial court improperly determined that no genuine issue of material fact existed as to whether the defendant's leasing of the property constituted a "surrender" of "the premises" within the intended meaning of article three of the testatrix' will. According to the plaintiff, the phrase "surrenders the premises" was an ambiguous expression of testamentary intent that required the trial court to consider extrinsic evidence in order to determine whether the testatrix intended that a leasing of the property constitute a surrender of the premises. The defendant counters that the testatrix' use of the word "surrender" in the will unambiguously evinced her intent that a surrender of the premises mean a "surrender" as defined in the law of estates: "A yielding up of an estate for life or years to him who has an immediate estate in reversion or remainder . . . ." Black's Law Dictionary (5th Ed.). Consequently, the defendant maintains that, as a matter of law, she did not surrender the premises when she leased the property to a third party. We agree with the plaintiff.

" 'Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ' " *Gurliacci* v. *Mayer*, 218 Conn. 531, 561–62, 590 A.2d 914 (1991). The issue, therefore, is whether the trial court properly determined that the testatrix' will so unambiguously expressed her intent that the phrase "surrenders the premises" carry the technical meaning accorded the term "surrender" in the law of estates that, as a matter of law, the defend-

ant's leasing of the property to a third party did not constitute a surrender of the premises.

In construing a will, the "meaning of language used cannot be determined by an arbitrary rule of legal definition, but depends in each case on the peculiar provisions and character of the special will in question, which must to a large extent be its own interpreter." *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 A. 645 (1908). The proper contextual examination of a word carrying a technical legal meaning, for example, may indicate that the testatrix used the word in a nontechnical or otherwise more restricted sense. Id.; see *Stanton* v. *Stanton,* 140 Conn. 504, 515, 101 A.2d 789 (1953); see also *Canaan National Bank* v. *Peters,* 217 Conn. 330, 336, 586 A.2d 562 (1991). In such instances, the expressed intent of the testatrix must be effectuated by construing the particular word accordingly. *Stanton* v. *Stanton,* supra. Moreover, testamentary language "susceptible of different meanings is to be given that meaning which will most nearly effectuate the [testatrix'] intention." *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 67, 112 A. 689 (1921). "This requires the court, at times, to resort to extrinsic facts as an aid in explaining any language whose meaning the [testatrix] has left uncertain." *Ministers Benefit Board* v. *Meriden Trust Co.,* 139 Conn. 435, 444, 94 A.2d 917 (1953); see *Cornell* v. *Cornell,* 165 Conn. 376, 382, 334 A.2d 888 (1973).

An examination of the word "surrender" in its context in article three of the testatrix' will discloses that she employed the word as a transitive verb, followed by the object "the premises." Although the "usual and appropriate meaning" of the word premises in the law of estates denotes an interest or estate, the word "is used in common parlance to signify land, with its appurtenances" and the "buildings thereon." Black's Law Dictionary (5th Ed.); see Webster's Ninth New Collegiate Dictionary. The susceptibility of the word prem-

ises to "a duplicity of meaning"; *Cornell* v. *Cornell,* supra, 382; creates an ambiguity as to the precise act that the testatrix intended to amount to a surrender of the premises when she used those words in her will. This ambiguity is further compounded by the susceptibility of the word surrender to a similar duplicity of meaning. Specifically, the technical meaning of the word surrender in the law of estates, "as referring to the transfer of an estate, has been somewhat obscured by its frequent use in an untechnical sense, as referring to the relinquishment or yielding up, not of an estate, but of the physical possession of the premises . . . ." 4 H. Tiffany, Real Property § 960.

In view of these ambiguities, we conclude that the intended meaning of the entire phrase "surrenders the premises" in article three of the testatrix' will is not discernible from the language of the will alone.[4] The issue of the legal effect of the defendant's act of leasing the property, therefore, cannot be resolved without resort to "extrinsic evidence as an aid in removing the doubt and in finding the [testatrix'] true intention from the language through which [she] expressed [herself]." *Hoenig* v. *Lubetkin,* 137 Conn. 516, 519, 79 A.2d 278 (1951).[5] The trial court should not have summarily adjudicated that issue.

[4] The defendant asserts that even if we were to find ambiguity in the phrase "surrenders the premises," that ambiguity must be resolved in her favor because an established tenet of will construction "forbids the cutting down of an express and positive devise in fee, or bequest absolute in terms, in one clause, to an inferior or lesser estate by another clause, unless the second clause expressing the lesser estate indicates a clear intention that the greater estate shall be cut down to the lesser estate." *Hull* v. *Hull,* 101 Conn. 481, 486, 126 A.2d 699 (1924). Because the defendant herself claims that the testatrix devised a life estate to her, rather than a "fee, or bequest absolute in terms," the above principle is inapposite to this case.

[5] The record indicates that the plaintiff offered such evidence on the defendant's motion for summary judgment, namely, that the attorney who drafted the will advised the defendant, upon the testatrix' death, that it was necessary to occupy the property in order to take advantage of the life estate devised to her.

## II

The plaintiff next argues that the trial court improperly determined that no genuine issue of material fact existed as to whether the defendant committed waste actionable by the plaintiff and subject to immediate relief in damages under § 52-563.[6] The defendant responds with two alternative contentions. First, she contends that the plaintiff's claim of waste was not actionable under § 52-563 because the plaintiff failed to allege or produce evidence demonstrating that the defendant's waste had caused "permanent and substantial" injury to the property. Second, the defendant contends that § 52-563 authorizes only equitable relief, and not relief in damages, before the termination of her life tenancy. We consider the defendant's alternative contentions in turn.

## A

Section 52-563 provides: "Any person who, having no greater interest in real property than an estate for years, or for life, created by the act of the parties and not by the act of the law, commits waste upon the premises, beyond what tenants for years or life created by operation of law may do, shall be liable to the party injured in an action on this section, unless he was expressly authorized, by the contract under which the interest is created, to do the acts complained of." With respect to the defendant's contention that the plaintiff's claim of waste was not actionable under § 52-563 in the absence of substantial or permanent injury to the property, the plaintiff directs our attention to the following evidence that she submitted in opposition to the defendant's motion for summary judgment: building inspector William Conrad's affidavit asserting that

---

[6] See footnote 2, supra.

the defendant had neglected to make a number of "ordinary repairs" necessary "to preserve the property"; the defendant's deposition testimony acknowledging her failure to maintain particular areas of the property and certain of the structures thereon and photographs depicting the property in its original condition in approximately 1969 and its comparatively deteriorated condition in approximately 1989. The plaintiff asserts that this evidence raised a genuine and material factual issue as to whether the defendant committed waste by failing to make ordinary repairs to the property, thus entitling her to bring an action against the defendant under § 52-563.

The defendant concedes that the plaintiff's evidence disclosed that "some ordinary repairs were needed to preserve the property and keep it in a reasonable state of repair." In addition, the defendant acknowledges that she was "responsible" for making such repairs. See *Hooker* v. *Goodwin,* 91 Conn. 463, 471, 99 A. 1059 (1917). The defendant nonetheless contends that the evidence was insufficient to preclude summary judgment because it did not show that her failure to make ordinary repairs had resulted in permanent and substantial injury to the property. Although the defendant does not attempt to ground this contention upon the language of § 52-563, an endorsement of her position would require that we construe the word injured in the statute to require permanent and substantial injury, in the absence of which, as the defendant asserts, a claim of waste does not "rise to the level of an actionable claim" under the statute. Because such a construction of § 52-563 to a large extent would absolve the defendant of her acknowledged duty to make ordinary repairs, we reject it.

A life tenant is bound to keep the land and the structures comprising the estate " 'in as good repair as they were when he took them, not excepting ordinary or nat-

ural wear and tear . . . .' " *Ferguson* v. *Rochford,* 84 Conn. 202, 205, 79 A. 177 (1911); see 4A G. Thompson, Real Property § 1900, p. 30; 5 R. Powell, Real Property § 640[3], p. 56-23. The obligation to make ordinary repairs is twofold. The tenant not only has the duty to make the ordinary repairs required to remedy a presently existing condition of substantial disrepair that may have injured the property substantially or permanently, but also has the duty to make any ordinary repairs necessary to prevent the property from progressively declining to the point where its deterioration, and the resultant injury to the inheritance, is substantial or permanent.[7] See 1 Restatement, Property § 139, comment (c); 5 R. Powell, supra, p. 56-22 ("duty to keep the premises in repair to prevent serious injury to the property"). In discharging the latter duty to make preventive ordinary repairs, for example, " 'if a new roof is needed, [the tenant] is bound to put it on; if paint wears off, he is bound to repaint.' " *Ferguson* v. *Rochford,* supra.[8]

---

[7] The drafters of the Restatement illustrate the dual aspects of a tenant's duty "to preserve the land and structures in a reasonable state of repair" as follows: "A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B for life.' At the time of the transfer, a house is located on Blackacre. I. B permits the exterior wood of this house to go without repainting until the boards are exposed to weather. The repainting of this exterior woodwork is necessary to prevent a progressive weathering of the structure. Such repainting is within the duty 'to preserve the land and structures in a reasonable state of repair.' II. B permits the interior woodwork to go without repainting and the walls to go without repapering for a period of fifteen years. These omissions amount to substantial deterioration of the structure. Repainting and repapering the interior of such house is within the duty 'to preserve the land and structures in a reasonable state of repair.' " 1 Restatement, Property § 139, comment (c), illustration 3.

[8] The defendant argues that *Ferguson* v. *Rochford,* 84 Conn. 202, 79 A. 177 (1911), is inapposite to the present case since that case involved a tenant in dower, and because the decision in *Ferguson* accordingly rested on the statute then setting forth certain of a dower tenant's obligations regarding permissive waste, including the duty to "maintain and keep in repair the buildings, fences, and lands set out to her for her dower, and in case she, or her assigns, shall neglect so to do, the persons entitled to the land

Like a tenant who fails to repair a presently exist-ing condition of substantial disrepair, a tenant who fails to make preventive ordinary repairs "commits waste" of the permissive variety within the meaning of § 52-563. Id., 204–205; see 4 G. Thompson, supra, § 1853, p. 400 ("[p]ermissive waste, as the name implies, consists in the mere neglect or omission to do what will prevent injury"). If, as the defendant urges, a claim of waste were not actionable under the statute until permissive waste produced substantial and per-manent injury to the property, a tenant effectively would be relieved of the preventive aspect of the duty to make ordinary repairs because no right of action would exist to enforce that duty. Because it would have been irrational for the legislature to mismatch the scope of a life tenant's duty to make ordinary repairs and the scope of the right to enforce that duty, thereby ren-dering the tenant less than fully accountable for inac-tion that unquestionably constitutes "waste" under § 52-563, we conclude that the legislature intended that such duty and such right be correlative in scope. The party to whom the life tenant owes the duty to make ordinary repairs is therefore actionably "injured"

at her decease, may complain to the superior court . . . ." General Stat-utes (1902 Rev.) § 388. A dower tenancy, however, was one of two species of tenancies formerly created by operation of Connecticut law. See *Moore* v. *Ellsworth*, 3 Conn. 483, 487–88 (1821); *Wilford* v. *Rose*, 2 Root 20, 21 (1793); see generally 2 Z. Swift, Digest of the Laws of the State of Con-necticut pp. 519–20; 5 R. Powell, Real Property § 637. Because General Statutes § 52-563 authorizes an action against a life tenant whose interest is "created by the act of the parties and not by the act of the law," if the tenant "commits waste upon the premises, beyond what tenants for . . . life created by operation of law may do," we infer that the obligations of such a tenant respecting permissive waste were intended at the very least to be commensurate with those imposed upon dower tenants by statute or under the common law. Accord *Hamden* v. *Rice*, 24 Conn. 350, 356 (1856). *Ferguson* is therefore apposite authority regarding the obligations of the defendant, whose tenancy was "created by the act of the parties," namely, the testatrix' creation of the tenancy in her will. See id., 356–57; see also *Lyon* v. *Robbins*, 45 Conn. 513, 526–27 (1878).

within the meaning of § 52-563 if the tenant "commits waste" by failing fully to discharge either aspect of that duty.[9] The relief furnished to redress permissive waste proved to have been committed necessarily will reflect the degree of injury to the property occasioned by such waste. See generally *Ratner* v. *Willametz,* 9 Conn. App. 565, 580–87, 520 A.2d 621 (1987); D. Dobbs, Remedies § 5.1.

Construing the plaintiff's evidence in the light most favorable to her; *Connell* v. *Colwell,* 214 Conn. 242, 247, 571 A.2d 116 (1990); we conclude that the plaintiff established a sufficient factual predicate from which it could be determined, as a matter of law, that a genuine and material factual dispute existed as to whether the defendant had committed permissive waste by neglecting to perform preservative acts comprehended within both aspects of her duty to make ordinary repairs. See id., 251. The declarations in the affidavit by Conrad indicated that the defendant had not made preventive ordinary repairs in that the front posts supporting the boat dock were "splitting and must be replaced," the mortar on a retaining wall had "cracked" and the wall had "moved," and "the wall coverings throughout the house [had] begun to come off the walls." With respect to the defendant's failure

---

[9] Because the plaintiff owns an indefeasibly vested future interest in the property in fee simple absolute; see footnote 10, infra; the defendant owes her a duty to make ordinary repairs. See 2 Restatement, Property § 187 (a) (owner of indefeasibly vested future interest in fee simple absolute possesses "a right correlative to each of the duties of the owner of an estate for life," including the "duty not to permit deterioration of land or structures"); see also L. Simes & A. Smith, Law of Future Interests § 1654 ("the right of the owner of the future interest to recover from the life tenant for waste is the converse of the duty of the life tenant to refrain from waste. While a life tenant may be under a duty to refrain from waste when a contingent remainderman may have no right of action against him, the owner of an indefeasibly vested reversion or remainder would always have a right where the sole life tenant is under a duty; there being no other owner of a future interest in whom the right could be vested").

to remedy presently existing conditions of substantial disrepair, Conrad asserted that "the support for the boat house [had] been seriously damaged and it appeared to be sinking at one corner," and further, "the pond . . . [had] grown in on all sides and is essentially unusable."

The defendant similarly acknowledged in her deposition testimony that she had ceased efforts to control the vegetation that had begun growing in the swimming area when it "got the better of [her]," and that while the island in the center of the pond had experienced "tremendous growth" during her tenancy, she had taken no action to control that growth since 1983. Notwithstanding the affidavit submitted by the defendant wherein real estate broker and appraiser Robinson Leach, Jr., contrarily alleged that his inspection of the property revealed "nothing other than 'normal wear and tear,' " this evidence can hardly be characterized as excluding "any real doubt as to the existence of any genuine issue of material fact" concerning the defendant's commission of permissive waste. *Batick* v. *Seymour*, 186 Conn. 632, 637, 443 A.2d 471 (1982). The court, therefore, should not have rendered summary judgment for the defendant on the plaintiff's claim that the defendant had committed permissive waste under § 52-563.

## B

With respect to the defendant's alternative contention that § 52-563 authorizes only equitable relief and not relief in money damages for waste before the termination of her life tenancy, we initially note that even if we were to agree with her, we nevertheless would conclude that summary judgment on the plaintiff's claim of waste was improper. The plaintiff's prayer for relief not only included a request for money damages, but also a request for "such other and appropriate equi-

table relief as the court may deem appropriate." Because § 52-563, as the defendant concedes, clearly authorizes immediate equitable relief for the commission of permissive waste; see *Brainerd* v. *Arnold,* 27 Conn. 617, 625–26 (1858); summary judgment should not have been rendered on the ground that no relief presently was available to the plaintiff even if she were to have proved her claim of waste. We nonetheless address the issue of whether § 52-563 authorizes relief in the form of damages before the termination of a life tenancy because it is likely to arise on remand.

In support of her claim that a life tenant is not "liable" under § 52-563 to pay damages for waste before the termination of the tenancy, the defendant principally relies upon an American Law Reports annotation reporting a number of cases from other jurisdictions so limiting a contingent remainderman's right to collect damages for waste. See annot., 56 A.L.R.3d 677, 681. The jurisdictions noted in the annotation relieve a life tenant from legal liability to a contingent remainderman on various grounds, each tied to the uncertainty that the future interest ever will become possessory.[10] In order to prevent a contingent remainderman's collection of damages " 'for that which may not be his' "; *Sermon* v. *Sullivan,* 640 S.W.2d 486, 487 (Mo. App. 1982); such jurisdictions limit contingent remaindermen to equitable remedies " 'to prevent the destruction of that which may become his.' " Id., 487–88; see *Strickland* v. *Jackson,* 261 N.C. 360, 361,

---

[10] As the drafters of the annotation note, however, many jurisdictions afford contingent remaindermen a legal remedy that reflects the tenuous nature of their interests. The Oregon Supreme Court, for example, has adopted a rule that "if the contingency is fairly certain, and, therefore, the likelihood of damage to the remainderman is high," the contingent remainderman is "entitled to a determination of the amount of damages and to an impounding of the proceeds . . . ." *Pedro* v. *January,* 261 Or. 582, 596–98, 494 P.2d 868 (1972), following *Watson* v. *Wolff-Goldman Realty Co.,* 95 Ark. 18, 24–25, 128 S.W. 581 (1910).

134 S.E.2d 661 (1964); see also 2 Restatement, Property § 188, comment (a); but see L. Simes & A. Smith, Law of Future Interests § 1652.

The comparative certainty of possession attendant to ownership of an indefeasibly vested future interest in fee simple absolute, the type of interest owned by the plaintiff,[11] entitles the owner thereof to the maximum protection available both in equity and at law. See 2 Restatement, Property § 187, comment (a); see also 5 R. Powell, supra, § 642[1], p. 56-31. It has been said that such an owner "may secure compensatory damages for injuries sustained. . . . He may enjoin threatened acts of waste, or secure a mandatory injunction to compel the performance of a duty by the life tenant with respect to the care of the premises." L. Simes & A. Smith, supra, § 1654 (c); see C. Smith & R. Boyer, Survey of Property c. XIII, p. 238. Accordingly, in *Hamden* v. *Rice,* 24 Conn. 350, 357 (1856), this court held that, under General Statutes (1854 Rev.) § 284, the first statute authorizing the action now provided for under § 52-563, a life tenant was liable in damages to an indefeasibly vested reversioner *before* the termination of the tenancy "to the extent of the injury" to the inheritance occasioned by an act of *voluntary* waste. Cf. *Ratner* v. *Willametz,* supra.

While we have not previously considered whether a life tenant likewise is "liable" under § 52-563 to pay damages for any injury to the inheritance caused by *permissive* waste, we see no principled reason why the immediacy of an indefeasibly vested future interest owner's remedy in damages should turn upon the variety of waste committed by the tenant. The variety of

---

[11] The plaintiff's interest in the property is an indefeasibly vested future interest in fee simple absolute because, pursuant to the terms of the testatrix' will, "[i]t is an interest certain to become present at a time not more distant than the end of a single present estate for life." 2 Restatement, Property § 187, comment (a).

waste committed does not diminish the certainty of such an owner's future possession of the wasted property, nor does the inaction that constitutes permissive waste necessarily produce less damage to the inheritance than an act of voluntary waste, which, under *Hamden* v. *Rice,* supra, gives rise to an immediate right of action for damages under § 52-563 irrespective of whether the life tenant remains in possession. Furthermore, the possibility that the tenant may choose to repair the damage caused by permissive waste before the termination of the tenancy does not, as the defendant claims, justify the suspension of such an owner's ability to obtain relief in damages under § 52-563 until such termination. Voluntary waste does not consist solely of acts irrevocably destructive, but includes acts subject to reparation at the tenant's election such as the unjustified removal of "anything which has been fixed, or in any manner fastened, to the house," such as "doors, floors, or wainscot." 2 Z. Swift, Digest of the Laws of the State of Connecticut p. 517; see C. Smith & R. Boyer, supra, pp. 238–39. Because the prospect of possible restoration does not prevent an indefeasibly vested future interest owner from obtaining immediate relief in damages "to the extent of the injury" to the inheritance caused by an act of voluntary waste; *Hamden* v. *Rice,* supra; that prospect should not bar the owner from obtaining similarly immediate relief for any injury caused by the inaction of permissive waste.

Having discerned no sound basis for distinguishing between the remedies immediately available to the owner of an indefeasibly vested future interest in fee simple absolute insofar as voluntary and permissive waste are concerned, we conclude that the available remedies should be coextensive. A life tenant, therefore, may be "liable" under § 52-563 to pay damages to such an owner for either voluntary or permissive waste before the termination of the tenancy. See

2 Restatement, Property § 187, comment (b) ("[w]hen the right of the owner of the [indefeasibly vested] future interest is that the owner of the estate for life shall . . . make repairs . . . this right is made effective through compelling by judicial action the specific doing of the act in question, or through giving to the owner of the future interest a judgment for the damages caused to him by the omission to act"). Consequently, the trial court should not have rendered summary judgment in the defendant's favor on the ground that § 52-563 does not authorize immediate relief in damages even if the plaintiff were to have proved that the defendant had committed permissive waste. Both equitable and legal relief, in the court's discretion, presently are available to the plaintiff under § 52-563. See generally D. Dobbs, supra.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

