EDWARD H. COFFIN et al., Respondents, *v* ASA B. PARKER
et al., Appellants.

*It seems,* the principle upon which rests the right of redemption of mort-
gaged premises, requires that the whole mortgage debt be paid, and this
is requisite to redemption by the owner of a portion only of the premises,
and the holder of the mortgage cannot, as a rule, be required to take a
sum less than the whole amount due and, upon the basis of apportionment,
to release a portion of the premises from the lien of his mortgage.

Where, however, after the commencement of an action by the owner of
one of fourteen lots, covered by a mortgage, to ascertain the amount
due for the purpose of redemption, the owners of the mortgage, with
others collusively and fraudulently, for the purpose of destroying the
lien of the mortgage upon two of the lots and of throwing the burden
thereof wholly upon the other lots, caused prior mortgages, one upon
each of said two lots, to be foreclosed without notice to the owners of
the others, and each of the lots to be sold for about the amount required
to satisfy the mortgage upon it, although worth much more, *held,* that
a judgment was proper, authorizing plaintiffs to redeem by payment of
the balance due upon the mortgage in question, less the proportionate
share thereof chargeable to said two lots.

Also *held,* that a provision in the judgment was proper, adjudging that
in case the owner of any one of the lots, other than plaintiffs' and the
two specified, should fail to pay its share of the mortgage, the lot should
be sold and the share paid to plaintiffs, and directing a reference to ascer-
tain the amount each of the lots should be charged for that purpose.

(Argued April 13, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made June 25, 1888, which modified and affirmed as modified,
an interlocutory and a final judgment in favor of plaintiffs
herein.

The action was brought for the determination of the amount
due upon a mortgage of date December 24, 1884, made by
Stillman P. Lincoln to Asa W. Parker, upon a certain parcel
of land divided into fourteen lots in the city of Brooklyn for
$14,000, with a view to redemption of the premises and to
require contribution to that end by the several owners of the
lots covered by the mortgage. There was a prior mortgage

of date December 23, 1884, made by Lincoln upon each lot, twelve of them to the General Synod of the Reformed Church of America, and two to the Board of Education of the Reformed Church of America. There was a blanket mortgage of date February 10, 1885, made by Lincoln to John Hart for $6,000, and by him soon after assigned to Sophie G. Parker, and another blanket mortgage of date April 7, 1885, for $5,000, made by Lincoln to Asa W. Parker. It is unnecessary to refer to other mortgages on the property. After default in payment of the interest on the fourteen first mortgages, Asa W. Parker, as subsequent mortgagee, in proceedings taken for that purpose, obtained direction of the court for assignment of those mortgages and assignments were made to his appointee, Ralph G. Packard. He assigned the $14,000 to Josiah S. Packard, in which Ralph G. Packard also had an interest. Sophie G. Parker proceeded to foreclose her mortgage and pursuant to decree for that purpose eleven of the lots were sold. One was purchased by the plaintiff Coffin, who conveyed an undivided half of it to the plaintiff Jones. One was purchased by Maria B. Pundt, who conveyed to defendant Brown. One by defendant Maben, and the other eight by Asa W. Parker. Afterwards, on foreclosure by Asa W. Parker of his $5,000 mortgage, the three remaining lots were sold and Sophie G. Parker was the purchaser. After the commencement of this action, two of the first mortgages on lots so purchased by Asa W. Parker and designated as 13 and 14 were assigned by Ralph G. Packard to Mary A. Sweezy, who proceeded to foreclose them, obtained decree pursuant to which they were sold to one Doody at sums producing no surplus. Upon the facts found by the trial court it was determined that the defendants Packards were entitled to be paid the amount of the $14,000 mortgage less the proportionate share chargeable to lots 13 and 14, which should be deducted from such amount; that if the owners of the other parcels or any of them should fail to pay the shares which should be borne by them, such lots should be sold and their shares paid to the plaintiffs; and that a reference be had to ascertain the amount with which

each of the lots should be charged for that purpose. An interlocutory decree was entered accordingly. The referee made his report, which was confirmed and final judgment entered.

The General Term modified the judgment of the Special Term by directing that on payment of the share chargeable upon any lot it be released from the lien of the $14,000 mortgage.

*Edwin Countryman* for appellants. The plaintiffs and the defendants Maben, Pundt and Brown cannot maintain this action as against said defendant, Josiah S. Packard, the holder and owner of said $14,000 blanket mortgage. (*Palk* v. *Clinton*, 12 Ves. 48; *Cholmondeley* v. *Clinton*, 2 Jac. & W. 1, 189; *Lamb* v. *Montague*, 112 Mass. 325; *Gliddon* v. *Andrews*, 14 Ala. 733; *Knowles* v. *Rablin*, 20 Iowa, 101; *White* v. *Hampton*, 13 id. 259; *Merrett* v. *Hosmer*, 11 Gray, 276; *Street* v. *Beal*, 16 Iowa, 68; *Lanning* v. *Smith*, 1 Pars. 13; *Meecham* v. *Steele*, 93 Ill. 135; *Taylor* v. *Porter*, 7 Mass. 355; *Gibson* v. *Crehore*, 5 Pick. 146; *Lyon* v. *Robbins*, 45 Conn. 514; *Mullanphy* v. *Simpson*, 4 Mo. 319; *Bell* v. *Mayor, etc.*, 10 Paige, 49, 71; *Fletcher* v. *Chere*, 16 N. H. 42; *Newton* v. *Cook*, 4 Gray, 46; *McCabe* v. *Bellows*, 7 id. 148; *Douglass* v. *Bishop*, 27 Iowa, 216; 2 Washb. on Real Prop. 175; Powell on Mort. 339, 340; 2 Jones on Mort. 131, § 1072; 2 Crabb on Real Prop. 911; *Parkman* v. *Welch*, 19 Pick. 238.) Courts of equity are bound by statute law as well as courts of law. When, therefore, legal proceedings have been conducted according to the statute and judgment duly given therein, courts of equity are bound thereby as well as courts of law. (Bigelow on Fraud, 62.) The mere fact that these respondents complain that they had no notice of the foreclosures in question argues nothing; the test is, were they entitled to notice according to the statute? (*Shultz* v. *Hoagland*, 85 N. Y. 464.) Aside from the statutory notice, the respondents were not entitled to personal notice. (*Dambmann* v. *Schulting*, 75 N. Y. 55; Story's Eq. Im. 207; *Hadley* v. *C. C. I. Co.*, 13 Ohio St. 502; *Bench* v. *Sheldon*, 14 Barb. 66; *Paul* v. *Hadley*, 23 id. 521;

*P. Bank* v. *Bogart*, 81 N. Y. 107; Story on Const. 517.)
The failure of the one party to give notice to the other, in
order to constitute some degree of fraud must relate to the
concealment of material facts which it is the duty of the one
party to disclose to the other by virtue of the contract or by
reason of some trust or similar relation of the parties. (*Daub-
mann* v. *Sheldon*, 75 N. Y. 55; *P. Bank* v. *Bogart*, 81 id.
107; *Brackett* v. *Griswold*, 112 id. 454.) Before any finding
can be made that the assignment of the two first mortgages
on parcels 13 and 14 to Maria A. Sweezy, the foreclosure pro-
ceedings and sales are fraudulent and collusive, there must be
evidence to show that the parties to the proceedings — all the
parties plaintiffs, as well as defendants, were acting in concert
fraudulently and collusively to obtain such judgments and
sales, and such finding must be made in such actions or in an
action brought for the purpose of setting aside such assign-
ments, judgments and sales.

*Walter S. Logan* for respondents. There is no certificate in
the case that all the evidence given on the trial has been
included in it, and consequently the facts were not before the
General Term for review, and this appellant cannot claim here
that the judgment of the Special Term should have been
reversed on questions of fact. (Code Civ. Pro. § 992; *Porter*
v. *Smith*, 107 N. Y. 531; *Aldridge* v. *Aldridge*, 120 id. 614.)
The jurisdiction of courts of equity to apportion a general
charge upon separate parcels of land, when owned by different
persons, is elementary. (1 Story's Eq. Juris. [11th ed.] 62,
§ 64; 1 Pom. Eq. Juris. 452, § 411; 3 id. 211, § 1222;
1 Wait's Act. & Def. 155; 3 id. 172; *Harris* v. *Ingledien*, 3
P. Wms. 98, 99; *Cheesebrough* v. *Millard*, 1 Johns. Ch. 409,
415, 416; *Stevens* v. *Cooper*, Id. 425, 429, 431; *Burke* v.
*Christman*, 3 B. Mon. 50; *Dickey* v. *Thompson*, 8 id. 312;
*Beull* v. *Barclay*, 3 id. 265; *Aiken* v. *Yale*, 37 N. H. 501;
*Salem* v. *Edgerly*, 36 id. 46.) That portion of the judgment
of the Special Term which deducted the share that the two
street houses should have contributed towards the $14,000

mortgage from the amount which would otherwise have been found to be due upon it, was entirely justified by the findings and by the evidence. (*Stevens* v. *Cooper*, 1 Johns. Ch. 425.)

BRADLEY, J.   The plaintiffs, as owners of one of the lots, had the right to redeem the premises from the lien of the prior $14,000 mortgage by paying the full amount of that mortgage to the party entitled to it.   But such redemption was not the sole purpose of the action.   The plaintiffs, by it, sought relief which would require all the owners of the several lots covered by the mortgage to contribute to that end their proportionate shares of the burden.   And the result given by the judgment of the Special Term was that the plaintiffs be permitted to redeem the land covered by the mortgage by paying the amount of it, less the proportional sum with which the lots 13 and 14 were found chargeable ; and upon such payment the other lots respectively should be charged with their proportionate shares, and such of them as default in payment by the owners permitted, should be sold to realize the amount they respectively should bear of the burden of such prior lien, and by way of reimbursement of the plaintiffs.   Barring the charge made upon lots 13 and 14, and the deduction of the amount of it from that of the mortgage, there is no reasonable opportunity for controversy about the determination and judgment of the Special Term.   The redemption by the plaintiffs and their reimbursement by means of charging the due proportion upon the other lands covered by the mortgage, are well recognized rights to be afforded by a court of equity. (Pom. Eq. Jur. § 411 ; *Cooper* v. *Stevens*, 1 John. Chy. 425 ; *Salem* v. *Edgerly*, 33 N. H. 46 ; *Aiken* v. *Gale*, 37 id. 501.)

The equities of the owners of twelve of the lots covered by the mortgage were equal.   The other two lots, 13 and 14, had, before the trial, been sold on foreclosure of prior mortgages, and the proceedings had for that purpose were apparently in due form ; and unless such foreclosure and sale were collusive and in fraud of the plaintiffs, those two lots were not legally subject to the contribution charged upon them.   The trial

court found upon that subject that Asa W. Parker was the attorney for the Packards; that the assignment of the first mortgages were, by his request, made to Ralph G. Packard as his appointee; that the assignment of two of those mortgages covering the lots 13 and 14 to Mary A. Sweezy was made, the suit for the foreclosure of them was instituted and ·perfected by sale after the commencement and during the pendency of this action, without notice to any of the respondents; and that such assignment and foreclosure were collusive and fraudulent and done for the purpose of destroying the lien of the $14,000 mortgage on those lots, and of throwing the burden of it wholly upon the other twelve lots, and compelling the owners of them to pay it to save their property. There was some evidence tending to support the view of such purpose. While the defendants Packard do not appear personally to have taken part in the business relating to the mortgages, they seem to have been represented by Mr. Parker, who, in such relation to Ralph G. Packard, suggested to Mrs. Sweezy the subject of the purchase of those two mortgages, and it was upon his negotiation that the assignment of them was made by him as such representative or attorney and taken by her. At that time Mr. Parker had the legal title to those two lots derived from his purchase on the sale of the foreclosure of the mortgage held by his wife, Sophie G., and next subsequent to that for $14,000. The sale of the two lots on the foreclosure of the mortgages asigned to Sweezy had the apparent effect of divesting him of the title as well as relieving them from the lien of the mortgage in question which he had assigned to Josiah S. Packard, and Parker and his wife had the legal title subject to that mortgage of eight more of those lots. He was cognizant of the sale of the lots 13 and 14 on the foreclosure of the mortgages, and attended it, and although those lots were worth much more than the amount secured by the first mortgages upon them, they were sold for sums little less than sufficient to satisfy those mortgages and expenses of the foreclosure. It is difficult to account for this action of Parker in seeking Mrs. Sweezy to take the

assignments, making them to her, and the speedy foreclosure and sale for the amount produced by it, consistently with entire good faith in the transaction.    The inference from his evidence was permitted that he represented the Packards in the matter, and that the assignment was made with a view to the foreclosure, and to accomplish it without the knowledge of the owners of three of the lots, who claim they had no notice of it until proved by the defendants at the trial, and thus cast the burden of the $14,000 mortgage on the other twelve.    Neither Mrs. Sweezy or the purchaser, Doody, was called by the defendants to testify on the subject of the transaction, to repel any imputation which might arise out of it bearing upon the question of good faith of the defendant Parker in his relation to the sale and to the purchase by them.    The defendants could not properly do indirectly that which they would not be permitted to do directly.    After the commencement of this action it would not have been fair for them, without some notice to the defendants, to have taken proceedings to relieve a portion of the land from the lien of the second mortgage to defeat contribution of such portion to the burden of redemption, or reimbursement of the plaintiffs making it; and if, through the assignment, such was the purpose, it should be equally ineffectual to accomplish it.    The suit subsequently brought to foreclose the $14,000 mortgage was not necessarily the subject of any such imputation, because all the owners of the remaining lots were made parties defendant, and they had the means of protecting themselves.    Without referring here more specifically to the evidence tending in that direction, we think the inferences derivable from it were warranted as found by the court, that the assignment of the two of the first mortgages and the foreclosure of them, were collusive and fraudulent as against the plaintiffs and the respondent defendants in such sense as to justify the equitable relief given, as effectually as if the mortgagee had then voluntarily released the two lots from the lien of the $14,000 mortgage.    In such case the amount of the mortgage in behalf of the owners of other lots for the purposes of the redemption would have been

proportionally reduced. (*Cheesebrough* v. *Millard*, 1 John.
Chy. 409; *James* v. *Hubbard*, 1 Paige, 228; *Guion* v. *Knapp*,
6 id. 35; *Stuyvesant* v. *Hall*, 2 Barb. Chy. 151.) It follows
that there was no error in the direction of the interlocutory
judgment. And the value of the lots respectively in excess of
the amounts secured by the first mortgages upon them, and
the proportionate amount upon that basis of the $14,000 mort-
gage chargeable upon each of them as found by the referee,
was well supported by the evidence. The final judgment
treated as due upon the mortgage the amount remaining after
deduction of the proportionate sum found to have been so
chargeable upon the lots 13 and 14. But the General Term
so modified the judgments as to direct that on payment of the
declared proportionate share of any lot, it should be released
from the lien of the mortgage. This modification was made
upon the appeal and application of the defendants Maben and
Brown. And while it may be that, in view of the value of the
several lots, such method of redemption would not result pre-
judicially to the mortgagee, it is not in accordance with the
equitable rule applicable to such cases. The principle upon
which rests the right of redemption of mortgaged premises,
requires that the whole amount of the mortgage debt be paid,
and this is requisite to redemption by the owner of a portion
only of the mortgaged premises. The mortgagee cannot, as a
rule, be required upon the basis of an apportionment to take a
sum less than the whole amount due him, and release the lien
of his mortgage upon any of such premises. The relief of
such owner redeeming is in his remedy, founded upon the
principle of subrogation to the rights of the mortgagee, against
the other portions of the mortgaged premises, and to thus seek
or compel contribution. (*Smith* v. *Kelley*, 27 Me. 237; *Lyon*
v. *Robbins*, 45 Conn. 513; *McCabe* v. *Bellows*, 7 Gray, 148;
*Merritt* v. *Hosmer*, 11 id. 276; *Lamb* v. *Montague*, 112 Mass.
352; *Bell* v. *Mayor, etc.*, 10 Paige, 49, 71.) In view of the facts
as found by the court, the changed situation produced during
the pendency of this action did not render the addition of any
other parties necessary, and no supplemental pleading on the

Statement of case.

part of the plaintiffs was requisite to the relief awarded by the judgment. No other question requires consideration.

The judgment entered upon the order of the General Term should be affirmed, except so far as it modified the interlocutory and final judgments, and as to such modification reversed, and those judgments affirmed, with costs to the plaintiffs and without costs to any other party.

All concur, except BROWN, J., not sitting.

Judgment accordingly.