JAMES P. HANSEN, Guardian, Appellee, v. CERRO GORDO STATE BANK OF CLEAR LAKE, Defendant, et al., Appellant.
No. 39837.

APRIL 14, 1930.

*Ira W. Jones, R. F. Clough,* and *Blythe, Markley & Rule,* for appellant.

*Henry Curvo* and *Senneff, Bliss, Witwer & Senneff,* for appellee.

MORLING, C. J.—Plaintiff's application under Section 11792 was denied, on appeal to this court. *Northwestern Mut. Life Ins. Co. v. Hansen,* 205 Iowa 789. Most of the material facts are set out in the opinion in that case, and need not be here repeated. In disposing of the case, however, we there said:

"The record informs us that a suit in equity involving the rights of the parties under the liens and redemptions referred to is pending in the trial court. It is probable that different questions may properly be, and are, there raised,—whether the redemptioners might have protected themselves in the original suit, or at the bidding, or by supplemental suit; whether suit for contribution, subrogation, or exoneration is available, by resort to which the minors' land could be made to bear its just proportion of the common incumbrance, and be exonerated from liability for liens that, before redemption, rested on their land only. 3 Pomeroy's Equity Jurisprudence, Sections 1221 to 1226; 1 Pomeroy's Equity Jurisprudence, Section 411; *Coffin v. Parker,* 127 N. Y. 117 (27 N. E. 814); 42 Corpus Juris 352, 362, 453. These and allied questions are not before us in this statutory proceeding, on the record as here made, and are withheld from adjudication."

By agreement of the parties in the proceedings now before us, it was ordered that the suit in equity and the petition for new trial be "consolidated for the purpose of trial." The two proceedings were accordingly tried together. Decree was entered "for the dismissal of the cause as against the Cerro Gordo State Bank," and that:

"Mabel Meibergen is entitled to receive four fifths of the amount that was deposited by plaintiffs with the clerk, and the clerk was directed to pay said amount to her; that plaintiffs were entitled to have the other one fifth of said deposit returned to them, and the clerk was directed to return said deposit to

them. It was further decreed that the minor plaintiffs were exonerated from any further payment, and that the defendants and all persons claiming by, through, or under them have no interest in the southwest quarter of Section 16-97-22, Cerro Gordo County, Iowa; that the minor plaintiffs are the absolute and unqualified owners thereof; and that the title thereto was fully quieted in them. Under the record, the Cerro Gordo State Bank is not interested in the case, and the case was dismissed as to them * * *.''

Whether or not separate decrees were entered in the two proceedings does not appear, but no point in that respect is made.

Defendant contends that:

''The rights of the appellee to make redemption were conclusively adjudicated * * * and determined, as set out in the opinion of the Supreme Court in the case entitled *Northwestern Mutual Life Insurance Company v. Hansen et al.,* 205 Iowa 789, * * * It must be manifest that the petition in the original foreclosure proceeding, denominated a petition for a new trial, is not a petition for a new trial at all, but is merely asking for terms of redemption, which was the issues decided in the former trial, and affirmed by the Supreme Court in the decision handed down in 205 Iowa 789.''

The decision in 205 Iowa 789 was, however, expressly confined to a determination of the right of the plaintiff to the remedy allowed by Section 11792. His right to relief in equity was held not to be before us, and was expressly withheld from adjudication there. The judgment in that suit was, therefore, not *res adjudicata,* and did not operate as an estoppel. *Jones v. Southern Surety Co.,* 210 Iowa ——; *B., C. R. & M. R. Co. v. County of Benton,* 56 Iowa 89; *Hargrave v. City of Keokuk,* 208 Iowa 559; *Parkinson v. Fleming,* 208 Iowa 345; 34 Corpus Juris 797, 890, 896, 931. The order consolidating the causes ''for the purpose of trial'' was only that the two be tried together. Their separate identity was not destroyed. The effect was merely that there should be but one trial for the two causes. Separate judgments should have been entered. 1 Corpus Juris 1121; 38 Cyc. 1269. We need not determine whether the petition

for new trial was a proper remedy, or whether it was barred as to the result of the proceeding under Section 11792.

Defendant argues that, by proceeding to make redemption under the statute, plaintiff conclusively elected his remedy. But it was held in the former case that plaintiff had no remedy under the statute. Hence there could be and was no election of remedies. *Courtney v. Courtney*, 149 Iowa 645. Section 11792 and Chapter 500, Code, 1924, of which it is a part, are designed, and they provide, merely for the right, time, place, and method of making statutory redemption from an execution sale as between the purchaser at execution sale, on the one hand, and junior lien holders and the debtor, on the other, and also as between redeeming lien holders, on the one hand, and the debtor or owner, on the other, and as between the lien holders themselves. As to redemption creditors, the statute assumes the relationship of debtor and "creditor whose claim becomes a lien prior to the expiration of the time allowed for such redemption." Section 11776. The Cerro Gordo State Bank and the appellant, Mabel Meibergen, were not creditors of the deceased owner of the 160 acres or of her minor heirs. They never had any lien upon the land of the decedent while she was living, or upon the two-thirds interest of her children after her death. Whether they had a lien upon the one-third interest of the surviving husband, James P. Hansen, is a question that goes merely to the amount required to be paid by the minor heirs in exonerating the 160 acres. Appellant raises no question that the judgments were liens on the one-third interest of the surviving husband, James P. Hansen, at the time of the conveyance by him of his interest to the minors, or that the court allowed to her an inadequate amount. The contention of the appellant is, therefore, reduced to this: That, by means of foreclosure of a mortgage and execution sale thereunder of mortgaged premises consisting of different tracts owned by the mortgagors in severalty, and sale of the mortgaged premises *en masse*, and redemption by lien creditors of one of the mortgagors by virtue of liens existing only on that part of the mortgaged premises owned by the judgment debtor in severalty, such judgment liens are so extended as to attach to that part of the mortgaged premises in which the judgment debtor never had any interest. In other

words, that, by force of the statute intended only to grant and regulate right of redemption from execution sale, an owner of one of several tracts of land sold *en masse* at special execution sale to pay the common incumbrance on all must, after redemption by lien creditors of the owner of the other mortgaged tracts, in order to pay off the common incumbrance, before sheriff's deed is due, pay, not only the entire common lien upon his own and the co-owners' land, but the particular liens upon the lands of the co-owners under which redemption is made, and for which the owner attempting to make payment of his own part of the debt is in no wise responsible. The proposition is a startling one.

Decedent obtained the 160 acres "from her people," and apparently her husband never had any interest in it, further than his inchoate, and afterwards consummate, distributive share, or "dower." He acquired 80 acres of his own. He became indebted, and the two tracts, the 160 and the 80, were together mortgaged, and the proceeds of the mortgage "used to pay my [his] own personal debts." Defendants obtained judgment against him for his debts. Decedent's minor heirs are only claiming an apportionment of the mortgage debt between the decedent's 160 acres and the husband's separate 80 acres. We therefore pass the question whether, as between the decedent, on the one hand, and her husband, James P. Hansen, and his creditors, on the other, she or her heirs had the right to have his 80 acres first exhausted for the payment of the mortgage. Decedent, and after her death her heirs, had the right, on paying the entire mortgage debt, to contribution from the owner of the 80 for the amount for which his land, as between them, was, in equity, primarily liable. 42 Corpus Juris 453. As between them, the primary obligation as to the husband's proportion of the mortgage debt was upon him. Decedent, on making full payment, was entitled to keep the lien of the mortgage alive, and enforce contributions and exoneration. 3 Pomeroy's Equity Jurisprudence, Section 1221 *et seq.*; 1 Idem, Sections 407, 411; *Ferry v. Miller*, 164 Mich. 429 (129 N. W. 721); *Hiller v. Nelson* (Ky.), 118 S. W. 292. Defendants contend for no right as a bona-fide purchaser under the recording laws, or by way of estoppel. Their liens, therefore, are limited to the interest which James P. Hansen had, and their rights

in the land are measured by his rights. We do not pause to discuss the effect of the failure of the plaintiffs to pay or tender payment of the mortgage indebtedness within the time allowed by law therefor. They paid the full amount of the mortgage debt into the clerk's office before the purchaser at execution sale, or its assigns, the lien creditor redemptioners, were entitled to a sheriff's deed under the execution sale. At the time of such payment, the defendant was but a lien holder. *Curtis v. Millard & Co.,* 14 Iowa 128. Defendant, except as to the amount required to pay off the sheriff's certificate of sale, had no lien upon or right in the land owned by the minors. The mortgage debt, with costs, was still a lien, and only a lien, on the mortgaged premises, and subject to payment. Defendant was compelled to pay that debt in its entirety, in order to protect her interest in the 80 acres. To so protect her interest before foreclosure, she would have been compelled to pay the whole debt. On paying the mortgage debt, she was entitled to the benefit of the lien of the mortgage, or the sheriff's certificate upon the whole property, to the extent necessary to enable her to enforce her right of contribution from the minors' land and exoneration of her land therefor. The minors, as owners of a part of the mortgaged premises in severalty, and as between them and the owner of the rest of the mortgaged premises and those claiming under him, had the correlative right of making payment of their proportionate share of the mortgage debt and exonerating their land from liability for that part of the common incumbrance which the co-owner or those claiming under him should pay. The question here is not between the mortgagors and the holder of the mortgage, who is entitled to payment in full, but is between the co-owners, one of whom has paid the common incumbrance, and is entitled, not to payment in full of the common incumbrance, but only to contribution. *Coffin v. Parker,* 127 N. Y. 117 (27 N. E. 814). On paying the mortgage debt and relieving the mortgaged property therefrom, the minors had the right to subject the separate land of James P. Hansen to payment of its proportionate part of that debt. The statute does not undertake to determine their rights as between themselves, or to give to creditors holding liens on the separate property of one of the mortgagors rights that he does not have in the rest of the mortgaged premises. See *Con-*

*nell v. Welch,* 101 Wis. 8 (76 N. W. 596). The rights involved here are the relative rights of the owners in severalty of different portions of the mortgaged premises subject to a common burden, and must be determined by equitable principles governing such cases.—*Affirmed.*

STEVENS, DE GRAFF, ALBERT, and WAGNER, JJ., concur.