JOHN B. GUTHRIE *vs.* ALFRED N. WHEELER AND ANOTHER, ADMINISTRATORS.

51 207
71 538

51 207
76 660

A testator gave his property to *W*, subject to the payment to his widow annually for her life of " the entire rents and profits of the estate remaining after the debts had been paid;" and to the payment, after her decease, of half the rents and profits to one of his brothers and the other half to another, during their lives; making *W* his executor. The widow died six years after, and *W* was in possession of all the estate and received the income until his death six years later. At this time he had not settled his administration account, which was settled by his administrators soon after his death. In assumpsit brought by one of the brothers named against *W's* administrators to recover his share of the income that had accrued since the death of the widow, it was held—

1. That the expression—" the entire rents and profits of the estate remaining after debts had been paid," was to be taken as intended to designate

the estate which was to produce the income, and not to fix the time to commence the payment of it to the beneficiaries.

2. That the plaintiff was therefore entitled to his share of the income before $W$'s administration account was settled in the probate court.

3. That this being money in the hands of $W$ to which the plaintiff was entitled, assumpsit would lie for it.

The plaintiff had contested the validity of the will. Held that while that suit was pending $W$ had a right to retain the income to await the result; but that after the validity of the will was established the plaintiff was entitled to his share of the income that had accrued in the meantime.

There was nothing in the position of the plaintiff as having disputed the validity of the will, that stood in the way of his taking the full benefit of its provisions when it was established.

There being no provision in the will that the taxes, cost of repairs and expenses of management should be paid out of the principal of the estate, it was held that the fact that the principal was given to $W$ subject to the payment of the income to the brothers for life, was not enough to prevent the application of the general rule, that such expenses and charges are payable out of the income.

And held that the expression "the entire rents and profits" must be taken to mean the entire net income and not the gross income.

A part of the estate was a farm, and a part of the income was from crops raised on it. Held that $W$ had a right to purchase hay with which to feed the stock on it, charging the income.

Also that he had a right to charge the income for money expended on a bridge belonging to the estate, both for ordinary repairs and for such improvements as were necessary to preserve the property and make it productive.

$W$ collected a large amount of money belonging to the estate and deposited it in a savings bank, and paid debts with his own money, charging the estate the amount thus paid. The savings bank failed and a considerable part of the deposit was lost. Held that he had no right to make the estate his debtor by advancing money for it when there was ample money of the estate for the purpose, and that the loss was therefore his own and not that of the estate.

And held that, since it was necessary, in determining the amount of income which the plaintiff should recover, to determine what the principal was which was to produce it, it was proper in this action to consider this matter, and not necessary that it should be made the subject of a suit for a breach of trust.

$W$ had, during the contest as to the validity of the will, retained the income and deposited it in the same savings bank, where it was in large part lost. Held that he had properly deposited it there and that the loss was that of the estate and not his own.

The suit being an action at law, held that the plaintiff could recover only simple interest.

[Argued June 8th, 1883—decided February 15th, 1884.]

ASSUMPSIT against the defendants as administrators of the estate of Elisha Wheeler, deceased; brought to the Superior Court. Facts found by a committee, and case reserved, on a demurrer to a remonstrance against the acceptance of the committee's report, for the advice of this court. The case is sufficiently stated in the opinion.

*W. B. Wooster* and *E. B. Gager*, for the plaintiff.

*H. B. Munson* and *J. W. Alling*, with whom was *A. N. Wheeler*, for the defendants.

CARPENTER, J. William Guthrie died in December, 1865, leaving a will, in which, after providing for the payment of his debts and the expenses of litigation then pending, and disposing of his wearing apparel and household furniture, he gave the bulk of his property to Elisha Wheeler "absolutely and in fee simple, subject to the following trusts." These trusts are then stated as follows:—

"First. The said Elisha Wheeler shall pay to my wife, Polly Ann Guthrie, annually, the entire rents and profits of the said entire estate which may remain after the said debts and charges have been paid, so long as she lives, or to occupy and improve said estate during her natural life.

"Second. At and after the decease of my said wife, then I direct the said Elisha Wheeler to pay to my brother Albert Guthrie the one half of the rents and profits of my said estate annually during his life, and likewise to pay the other half of said rents and profits to my brother John B. Guthrie during his life."

The John B. Guthrie mentioned in the last clause is the plaintiff in this action. Said Wheeler and Marshall S. Clarke were appointed executors. Wheeler was the active man in settling the estate. He permitted the widow to occupy the real estate during her life, and she had the income of the personal property. She died May 18th, 1871. After her death Wheeler was in the possession of all the estate, and received the income thereof until his death, January 1st, 1877.

Prior to his death he submitted to the court of probate an account in which the principal and the income of the estate were intermingled. The court directed him to present separate accounts—the one showing the principal and the other the income. Before that was done he died. After his death his co-executor, Clark, presented an administration account, which was allowed and recorded. The administrators of Wheeler submitted a statement of the income, which was accepted and ordered on file.

The plaintiff seeks to recover in an action of assumpsit his share of the income. The facts were found by a committee and the case reserved for the advice of this court.

The defendants contend that the action cannot be maintained—that an executor or trustee cannot be called to an account in an action at law, and that the subject matter of the suit, so far as Wheeler acted in the capacity of an executor, was within the sole jurisdiction of the court of probate, and, so far as he was trustee, was within the jurisdiction of a court of equity.

The administration account of the executor may be laid out of the case. That related only to the principal of the estate and this action has no reference to that. It relates only to the income of the estate, which Wheeler held not merely as executor, nor, in the ordinary sense, as trustee, but held it rather in his own private capacity. It is called for the sake of convenience a trust fund, but is not such in a strict and technical sense. The principal of the estate, that which produced the income, Wheeler held as executor for the purpose of paying debts and charges; otherwise he held it as his own property. The testator imposed certain burdens upon him, which he accepted when he accepted the provisions of the will. After the death of Mrs. Guthrie he received the income for the plaintiff and his brother. One half of it was money in his hands, which in equity and good conscience he was bound to pay over to the plaintiff. Had it been a fixed sum payable annually by his executors, it would have been an ordinary legacy for which assumpsit will lie. It differs from a legacy in this, that it is the income

which is to be paid, and it is to be paid by Wheeler personally. The income not being in a strict sense a trust fund, we think may be recovered in the equitable action of assumpsit.

We do not intend to say that a court of equity might not, under some circumstances, take cognizance of the principal of the estate. Should the representatives of Mr. Wheeler, or those who came into the possession of the property by purchase or otherwise, manifest a disposition to defraud those entitled to the income, doubtless there would be a remedy in equity. Should some person be appointed to take charge of the property he would be strictly a trustee, accountable to the plaintiff and his brother for the income and to those claiming under Wheeler for the body of the estate.

The defendants next contend that the plaintiff was not entitled to the income of the estate until after the settlement of the administration account; and that as the account was not settled until July, 1877, six months or more after Mr. Wheeler's death, there was nothing due from Mr. Wheeler, and that consequently his estate is not liable. This claim assumes that Wheeler during the settlement of the estate held the property solely as executor, and that, had he settled the estate, he would have held it solely as trustee. This, as we have seen, is not a correct view of the case. But allowing that the assumption is correct, it does not follow that the beneficiaries are to be postponed until the settlement of the estate. They cannot be deprived of the enjoyment of the provision made for them by any delay in the settlement of the estate. Thus in *Clement* v. *Brainard*, 46 Conn., 174, and *Clement's Appeal from Probate*, 49 Conn., 519, Mr. Brainard retained possession of the property, which was given to him as trustee, as executor for several years and during the lifetime of the *cestuis que trust;* yet the trust existed and was recognized and the income paid over to the *cestuis que trust*, although the property never came into his hands *as trustee*. As executor he in reality executed the trust, although the court held that

he was not technically a trustee so as to be liable to account in a court of equity in advance of the settlement of his administration account. Subsequently, when he settled his account in the court of probate, the trust was recognized, as it had been previously, and the estate was settled according to the provisions of the will.

In this case we cannot doubt as to the intention of the testator. The rents and profits are to be paid annually during life. The expression—"the entire rents and profits of the said entire estate which may remain after the said debts and charges have been paid"—was intended to designate the estate which was to produce the income, and not to fix the time to commence paying it to the beneficiaries.

The construction contended for by the defendants, if enforced strictly, would have deprived the widow of her support during life after the death of her husband. Mr. Wheeler did not so construe the will, but he allowed the widow to take possession of and improve the real estate, and paid to her the income from the personal property. This practical construction was the correct one.

The claim of the defendants that the plaintiff is estopped from claiming the income during the time the will was in litigation, is not tenable. He had a legal right to contest the validity of the will. After the will was established it was equally proper for him to claim the benefit of its provisions. In this there was no inconsistency—no antagonism. The two claims were not pressed simultaneously but successively.

The plaintiff claims that the defendants are not entitled to have the taxes, the repairs, and the expenses of managing the estate, deducted from the income. It is conceded that in ordinary trusts such expenses must be paid from the income of the trust fund. If it is otherwise in this case, it is so by reason of the provisions of this will. If the testator had intended that one half of the gross income should be paid to the plaintiff we should expect to find that intent expressed in the will. We do not think the words "entire rents and profits, &c.," express such an intention. The

word "rents" is more particularly applicable to real estate, and in this case to a farm. Ordinarily we should understand from it the products of the farm after paying expenses. The word "profits," used in this connection, necessarily imports the balance of the income after paying expenses.

The testator doubtless meant by the expression "the *entire* rents and profits" *all* the rents and profits; and it is as applicable to the net income as to the gross income. We think the better view is that in this case, as in ordinary trusts, the income shall bear the expenses. The circumstance that Wheeler ultimately has the property cannot change the rule. The testator might indeed have imposed upon him the burden of managing the property, but he has not done so, and we are not at liberty to do it.

While Mrs. Guthrie occupied the farm she purchased the stock belonging to her husband's estate. After her death, and the farm had come into the possession of Wheeler, he re-purchased the stock for the farm. This was in 1871. By reference to the account it will appear that the income from the farm consisted of the avails of produce sold for that and the succeeding years.

The farm must be stocked in order to be productive. It is found that the purchase was reasonable and proper, if he had a right to make it. That it was his right to stock the farm we can entertain no doubt. That being so, it is conceded that it was right for him to purchase necessary hay with which to feed the stock.

Money expended on Bennett's Bridge should also be paid out of the income. It is true it was expended not for ordinary repairs but for repairs in the nature of permanent improvements. But it is difficult to make any legal distinction between ordinary and extraordinary repairs. If they are necessary in order to preserve the property and make it productive, they should be paid for from the income. If the life-tenant should die soon after making such repairs there may be an apparent hardship. On the other hand if he lives many years, as in this case, he receives the benefit of the investment.

It seems that Wheeler collected money belonging to the estate to a large amount prior to May 19th, 1871, and deposited it in the Townsend Savings Bank. He paid the bills of the estate largely in his own money. In respect to that matter it is found as follows:—"Had he used the money so collected and deposited to pay the bills of the estate, there would have been in said bank on the 19th day of May, 1871, on deposit under the various names aforesaid, the sum of $1,424.27, instead of $4,529.06, the actual amount so on deposit." After the executor's account was settled the amount paid by Wheeler from his private funds was repaid to his estate, and the amount deposited in the Townsend Savings Bank was treated as a part of William Guthrie's estate. That bank failed in August, 1874, resulting in a considerable loss. Of course the plaintiff is only concerned with the interest, and he claims that the loss of interest, if any, should fall on Wheeler's estate. The ground of this claim is that Wheeler, having in his hands the funds of the estate, was bound to use those funds to pay the bills against the estate,—that he had no right to borrow money of himself for that purpose, thus unnecessarily exposing the money of the estate to risk of loss. We are inclined to think that this claim ought to be sustained. We see no reason for borrowing money of himself or others with which to pay those bills when he had sufficient money in his hands belonging to the estate for that purpose; and having done so without a sufficient excuse he did so at his peril. The safest and therefore the best investment a man can make is to pay his debts, and especially is this true of an estate in process of settlement. The course taken by this executor was not a step in the line of settling the estate, but a step in the other direction. Instead of discharging debts due from the estate he substituted for them other indebtedness, himself being the creditor, and made the savings bank a debtor to the estate. No fact appears in the case that will justify this proceeding. The question is not whether he had a right to deposit money not wanted for immediate use in the Townsend Savings Bank, but whether he had any right

to deposit money which was wanted for immediate use at all.

Of course the loss of principal will fall on Wheeler's estate in any event, as it was his estate subject only to the right of the plaintiff and his brother to the interest. They have a right to insist that the money in the savings bank shall be treated as his property—that is, as though he had paid out the money belonging to the estate to pay the claims against the estate and deposited in the savings bank his own funds.

The defendant, however, insists that this is "misconduct, neglect of duty, a breach of trust," and that the action of assumpsit is not a proper remedy for such a wrong. We do not look at it exactly in that light. Except for the matter of interest, he had a right to do as he pleased with the money. But for the purpose of determining the amount of income the plaintiff is entitled to recover, we think it equitable to consider the funds used to reimburse Wheeler's estate as belonging to the estate of William Guthrie, and to settle the matter in this action rather than to turn the plaintiff around on this point and drive him to commence another suit.

Between May, 1871, and August, 1874, Wheeler deposited in the Townsend Savings Bank, of the income of Guthrie's estate, the sum of $2200. The plaintiff insists that the loss thereby incurred shall also be borne by Wheeler's estate. That depends upon the question whether it was his duty to pay over the income as received to the plaintiff. If it was he had no right to deposit it. The reason given for not paying it over is, that the validity of the will during all that time was denied and a suit was pending involving that question, which suit was being prosecuted by the plaintiff. Until that was determined it could not be known whether the plaintiff was entitled to one half of the income or whether the whole should be distributed to the heirs at law. The plaintiff had no right at that time to demand any portion of the income under the will; consequently Wheeler was not bound to pay it to him. It necessarily follows that

it was his right, if not his duty, to deposit it. As the savings bank was a legal depository for trust funds and in good credit, we think he was justified in depositing it there, and that the loss must be borne by the plaintiff.

As this is an action at law the defendants are only liable for simple interest during the time that the income was wrongfully withheld.

We advise the Superior Court that the action of assumpsit may be maintained; that Wheeler was not technically a trustee, nor was he acting merely as executor, but was liable personally, and that consequently his estate is liable; that the plaintiff was entitled to one half of the income annually after the death of Mrs. Guthrie, but that Wheeler was justified in withholding payment until after the will was finally established; that the plaintiff is not estopped from claiming the income during the time the will was in litigation; that the taxes, expenses of managing the estate, of hay purchased for stock, and repairs on Bennett's Bridge, are to be paid out of the income; that the loss of interest resulting from depositing the sum of $3,094.79 in the Townsend Savings Bank should be borne by the estate of Elisha Wheeler; that the loss resulting from depositing income in said bank should be borne by the plaintiff and his brother; and that the defendants are liable for simple interest only during the time that the income was withheld from the plaintiff.

In this opinion the other judges concurred.