GEORGE FANNING ET AL., EXECUTORS, *vs.* JULIA A. MAIN ET AL.

Second Judicial District, Norwich, April Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A testator, who died in 1890, gave his widow during widowhood "the interest and income" of $4,500, and, after making sundry other bequests, directed his executors to hold, manage, invest and reinvest the residuum of his estate and at the end of five, ten and fifteen years to "pay over and deliver" one-third part thereof with its accumulations to his children and to the heirs of such of them as might then be dead, to whom he devised and bequeathed the residue in fee. In a later paragraph he directed his executors to allow and pay to certain of his children, to whom he had made specific gifts for life, "only the rents, interest and income of their respective shares or installments of said residuum of my estate for life, and then to pay to their heirs at law respectively." In a suit to construe the will it was *held :* —

1. That after the separation and lawful investment of the widow's fund of $4,500, she was entitled to the net income of the investment and no more.
2. That prior to such separation she was entitled to interest on the $4,500 at the average rate realized by the executors from the invested personalty in their possession.
3. That interest which had been paid to her voluntarily in excess of such average rate could not be recovered back nor made the basis of a set-off.
4. That having once expressly given the residuum to his children in fee, the testator had not, by the language used, afterwards cut down such gift to a life estate; and that the mere direction to the

trustees to pay the fund to another upon the death of certain children did not diminish the estate in fee already given them.

It is a sound rule of construction that an express and positive devise in fee cannot be cut down to an inferior estate by a subsequent clause in the will, unless that be equally express and positive: a mere implication is not enough.

An estate in fee simple, once fully given, cannot be withheld from the owner by the interposition of a naked trust, nor his *jus disponendi* abridged by a direction to the trustee to pay the fund upon his death to another.

Argued April 27th—decided July 1st, 1904.

SUIT to determine the construction of the will of William L. Main of Ledyard, deceased, brought to and reserved by the Superior Court in New London County (*Ralph Wheeler, J.*), upon the facts alleged in the complaint, for the advice of this court.

*Amos A. Browning*, for the plaintiffs.

*Wallace S. Allis*, for Chauncey E. Richmond *et al.*

*Hadlai A. Hull*, for Julia A. Main.

*Herbert W. Rathbun*, for Frances A. Richmond *et al.*

*Jeremiah J. Desmond*, for Julia Cromwell *et al.*

BALDWIN, J. The testator, who died June 20th, 1890, left, in lieu of dower, to his widow during her widowhood, "the interest and income of three thousand dollars" and either the use of his farm or, at her election, "the interest and income of fifteen hundred dollars," and also certain other property out and out. By articles 5, 11 and 14 of the will, life estates in certain properties were given respectively to three of his children, Leeds, Frances and Horace. Leeds died in 1895. By article 19, the executors were directed to hold, manage, invest and reinvest, the residuary estate, "collecting the rents, interest, income and dividends thereof, whenever due and payable capitalizing the same,

and causing the whole to accumulate thereby, for five years
from and after the end of one year, after my decease, and
then at the end of the said five years I order and direct my said
Executors to pay over and deliver by legal instruments one
third part of the said residuum of my estate, and accumu-
lated interest thereon at the time, to my children and to the
heirs at law of such of them as may then be dead, their
parents' equal share thereof—To whom I give devise and
bequeath the same and all the same.   To Have and to Hold
the said one-third of the said residuum of my estate and its
accumulations to them my said children and to the heirs at
law of such of them as may be dead.   To them their Heirs
and assigns forever."   Articles 20, 21, 22 and 24 were as
follows : —

   " *Twentieth :* At the end of the said five years, and after
the payment and delivery of the said one third of the said
residuum of my estate and its accumulations as aforesaid by
my said Executors, then I order and direct them to hold and
manage, that part of the said residuum of my estate then in
their hands and possession, with its accumulations as here-
inbefore directed for five years more to wit: —until ten
years from and after the end of one year after my decease
and then to pay over and deliver by proper legal instruments,
one-half of the balance of the said residuum of my estate,
and its accumulated interest at the time in their hands and
possession to my children, and to the heirs at law of such of
them as may be dead at the time their parents share thereof,
at the rate, and in proportion to the amount of the specific
gifts and Legacies at first hereinbefore given them.   To
whom I give and bequeath the same and all the same :. To
Have and to Hold the above described one half of the bal-
ance of the said residuum of my estate in the aforesaid pro-
portions to them their heirs and assigns forever.

   " *Twenty-first :* At the end of the said ten years and after
the payment and delivery of the two first installments from
the said residuum of my estate and its accumulated interest
as aforesaid by my said Executors, then I order and direct
them to hold and manage that part of the said residuum of

my estate then in their hands and possession and its accumulations as hereinbefore directed for five more years, to wit:—until fifteen years from and after the end of one year after my decease, and then to pay over and deliver by proper legal instruments all of the remainder of the said residuum of my estate, and its accumulated interest then in their hands and possession to my children, and. to the heirs at law of such of them as may be dead at the time their parents share thereof at the rate and in proportion to the amounts of the specific gifts and legacies at first hereinbefore given them. To whom I give and bequeath the same and all the same. To Have and to Hold the above described remainder of the said residuum of my Estate in the aforesaid proportions—to them their heirs and assigns forever.

" *Twenty-second :* In case that my beloved wife Mrs. Julia A. Main shall survive and outlive me more than sixteen years, then and in that case I order and direct my said Executors not to pay over and deliver the last installment of the said residuum of my Estate until six months after the decease of my said wife.

" *Twenty-fourth :* To such of my children as I have hereinbefore given their specific gifts and legacies for life only as will appear by sections five, eleven and fourteen of this will, I order and direct my said Executors to allow and pay to them and each of them, only the rents, interest and income of their respective shares or installments of the said residuum of my estate for life, and then to pay to their heirs at law respectively as provided and directed in the nineteenth, twentieth, and twenty-second sections of this will."

The widow elected to take the interest and income of $1,500, instead of the use of the farm. Our advice is asked as to the interest or income to which she was entitled on this and the other fund of $3,000 after July 1st, 1896. She has since been paid, semi-annually, interest at the rate of four per cent. a year. In January, 1902, the full principal amount of $4,500 was invested as a separate account for her benefit, in a savings bank, and since then interest at the

rate of four per cent., paid semi-annually, has been received therefrom.

It was proper for the executors to set apart, in January, 1902, the special fund of the amount of $4,500 for the benefit of the widow during widowhood, and it would have been better to do so earlier. They invested it in a mode permitted by law. From that time she has been entitled to the net income from the fund as thus invested, and no more. From July 1st, 1896, to that date she was entitled to the interest on $4,500 at the average rate realized by the executors from the invested personal property in their possession. This having been in excess of four per cent., it is their duty to pay her the balance. No deduction should be made from this balance for the services of the executors. By article 16 they were constituted executors under the express "condition that they will accept the appointment and settle my Estate according to the provisions of this will, for the sum of one hundred and fifty dollars each." Until January, 1902, they retained this $4,500 as an unsevered part of an unsettled estate, and as against the widow could ask for no compensation beyond the sums fixed by the testator.

Up to July 1st, 1896, they paid her interest on $4,500 at the rate of six per cent. a year. Some of the residuary legatees suggest that this was too much, and therefore that she should be paid nothing more on account of the interest since accrued. Whatever she has already received was paid to her voluntarily, and with full knowledge of all the facts bearing upon her claim. It could not be recovered back, nor can any claim of set-off be based upon it.

Our advice is further asked as to whether shares in the residuum are devised and bequeathed to the testator's daughter Frances and son Horace for life, or absolutely. Article 19, standing alone, clearly gave each of them, six years after the testator's decease, an absolute share in one-third part of the residuum. Article 24 directs the executors "to allow and pay to them and each of them only the rents, interest and income of their respective shares or installments of the said residuum of my estate for life." It

will be observed that these shares are described as "theirs." No words of revocation are used, as respects the fee simple given them by article 19. That remains the only estate with which they are invested by the will. No express gift of the principal is made in article 24 to their heirs: there is only a direction to pay. It is a sound rule of construction that an express and positive devise in fee cannot be cut down to an inferior estate by a subsequent clause in the will, unless that be equally express and positive. A mere implication is not enough. *Trustees of Methodist Church* v. *Harris,* 62 Conn. 93, 94; *Mansfield* v. *Shelton,* 67 id. 390, 394. The terms of article 24 are consistent with the supposition that the testator intended to leave these children invested with the same estate which he had given them by article 19, and desired only to control their enjoyment and disposition of it by leaving the property in the hands of his executors for their benefit during their lives and sending it upon their decease to their heirs at law. This was to impose conditions repugnant to the estate, and in such cases the estate stands and the conditions fall. An estate in fee simple, once fully given, cannot be withheld from the owner by the interposition of a naked trust, nor his *jus disponendi* abridged by a direction to the trustees to pay the fund upon his death to another.

Frances and Horace therefore each took an absolute estate in their shares of the residuum in the partial distributions made in 1896 and 1901. Should either of them live until sixteen years after the death of the testator, he will, for like reasons, take an absolute estate in the share of the remainder of the residuum to be set apart on his account.

The Superior Court is advised to render a judgment in conformity to this opinion.

No costs will be taxed in this court for or against any party.

In this opinion the other judges concurred.