W. Edwin Stanton, Executor (Estate of Benjamin C. Stanton) [Walter A. Hyde, Administrator, d.b.n., c.t.a., Substituted Plaintiff] *v.* W. Edwin Stanton [Edward F. Stanton, Administrator, Substituted Defendant] et al.

Baldwin, Inglis, O'Sullivan, Quinlan and Wynne, Js.

Argued October 14—decided December 22, 1953

*Charles V. James,* for the plaintiff.

*Carl H. Amon, Jr.,* of the Massachusetts bar, with whom, on the brief, was *Daniel L. Brown,* for the defendants Clarence Ralph et al.

*T. Emmet Clarie,* for the defendants Annette L. Jerome et al.

*Lester L. Egan,* with whom, on the brief, was *Joseph P. Smith,* for the defendant C. Stanton Gallup, Trustee.

*Paul J. Driscoll,* with whom, on the brief, were *Allyn L. Brown, Jr.,* and *Charles W. Jewett,* for the defendant Edward F. Stanton, Administrator.

*Henry H. Pettis,* for the defendants Voluntown Baptist Church et al.

INGLIS, C. J. Upon this reservation we are asked to construe the fifth, seventh and eighth paragraphs of the will of Benjamin G. Stanton. These paragraphs are set forth in full in the footnote.[1] The will

---

[1] "FIFTH. I give and bequeath to Clarence Ralph of Mansfield, Mass., all the interest that I may have at the time of my decease in the Sterling Manufacturing Company, an unincorporated company located in said Mansfield, to be his absolutely, in consideration and upon condition, however, that he shall pay to my estate one-third of the net yearly income from the operation of the said company for and during such time as it shall continue in operation and upon its sale or liquidation shall pay to my estate one-third of the net sale price, or liquidation value.

"SEVENTH. All the rest and residue of my estate, of whatsoever the same may consist and wheresoever located, I give devise and bequeath to Albert H. Stanton of Yarmouth, Maine, Annette L. Jerome of Uncasville, Conn.; Ella C. Twomey of Portland, Maine, and Clarence Ralph of Mansfield, Mass., *in trust,* however, they and their successors to hold, manage, invest and re-invest the same and use the net income therefrom for the proper maintenance and care of the "Stanton Homestead" property located on Ekonk Hill in the Town of Sterling and being the former home of my late father and mother, Avery A. and Laura C. Stanton, it being my desire that this property shall be kept in good condition as a memorial to my said father and mother and for the benefit of their descendants as long as there shall be any of such descendants living, and I hereby authorize my said

was executed on November 24, 1944. A codicil there-
to, dated September 18, 1946, substituted the plain-
tiff for the executor named in the will and added two
trustees but otherwise made no changes. The follow-
ing facts have been stipulated: The testator died
September 17, 1948. He was the son of Avery A. and
Laura C. Stanton. His only heirs at law were a
brother, three sisters, two nieces and a nephew. Also
surviving were eight nephews and nieces and numer-
ous grandnephews and grandnieces who were not his
heirs at law but were descendants of his father and
mother. He left an estate appraised at $128,489.77.

At the time he executed the will, the testator was a
partner of the Clarence Ralph named in the fifth

trustees to use any portion of the income from said trust fund that
may be available after all expense for the maintenance of the "Stanton
Homestead" shall have been met, for the aid of any poor and worthy
descendant of the said Avery A. and Laura C. Stanton who may need
assistance, and I further empower my said trustees in their wisdom
and discretion to use such portion of the principal of said trust fund
from time to time as they shall deem necessary for the proper carrying
out of the purposes of this trust, without any dangerous depletion of
the trust fund. Any vacancy on the board of trustees resulting from
death, resignation, or other cause shall be filled by the remaining
members of the board who shall elect a new trustee or trustees to
fill such vacancy or vacancies giving preference in such election
to the oldest living descendant of the said Avery A. and Laura C.
Stanton.

"Inasmuch as the aforementioned Clarence Ralph of Mansfield,
Mass., was taken into our home by my late wife and myself when he
was a young boy and brought up and educated by us, and inasmuch
as I have financed him in his business and look upon him as a son,
I direct that under the provisions of this will he be treated, con-
sidered and classified as a descendant of Avery A. and Laura C.
Stanton, and share in my estate as such.

"EIGHTH. Upon the death of the last descendant of the said Avery
A. and Laura C. Stanton, the trust set up in the Seventh paragraph
of this will shall terminate and I direct that what shall then remain
of said Trust Fund shall be disposed of as follows:

"One-half thereof to the Voluntown Baptist Church of Voluntown,
Conn., and one-half thereof to the Congregational Church of Ekonk
in Sterling and Voluntown, Conn., to each of them absolutely."

paragraph of the will. The partnership, started in 1934, did business under the name of Sterling Manufacturing Company in Mansfield, Massachusetts. Each partner had an equal interest. On January 6, 1947, the business was incorporated as the Sterling Manufacturing Company, Inc. The outstanding common stock of the corporation consisted of 476 shares, of which the testator and Ralph each owned 238. At the death of the testator the corporation was indebted to him in the amount of $15,200, as evidenced by notes. The business, both as a partnership and as a corporation, was always under the active management of Ralph and, other than by investing in it and by advancing money to it, the testator took no active part. From the time Ralph was thirteen years of age, in 1912, until he was twenty-four, and again for a period after Mrs. Stanton's death, he lived in the home of the testator. The testator regarded him as a son but had never legally adopted him. The Stanton homestead mentioned in the seventh paragraph of the will consists of a tract of about 270 acres with dwelling house, barns and other buildings thereon, located in Connecticut, partly in the town of Sterling and partly in the town of Plainfield.

The questions propounded are printed in the footnote.[1] The first three arise by reason of the fifth

---

[1] "a. Whether said Clarence Ralph is entitled to said shares of stock of said Sterling Manufacturing Co., Inc. and the notes issued by the said corporation in favor of the testator, under the provisions of Article Fifth of said will?

"b. If said Clarence Ralph is entitled to said shares and notes, whether said condition for payment of one-third of the net yearly income from the operation of said company to the decedent's estate is valid?

"c. If said Clarence Ralph is entitled to said shares and notes, whether the condition in said Article Fifth that upon the liquidation or sale of Sterling Manufacturing Co., Inc., one-third of the net sale price or liquidation value shall be paid to the decedent's estate is

paragraph of the will. They are improperly framed because question (a) contains two questions, i.e., whether Ralph is entitled to receive the shares of stock and whether he is entitled to receive the notes, and the answers to questions (b) and (c) are made dependent upon our answer to the double question propounded in (a). We will, however, answer the questions in a manner which will be adequate to guide the trial court in rendering judgment.

As to question (a), all the parties agree that the fifth paragraph is effective to bequeath to Ralph the testator's shares of stock in the Sterling Manufacturing Company, Inc. This necessarily excludes any consideration of a claim of ademption. See 57 Am. Jur.

invalid because it violates the rule against perpetuities or because of remoteness, or is otherwise invalid?

"d. Whether the trust created in Article Seventh of said will is an "honorary trust" and as such violates the rule against perpetuities, and because there are no definite or definitely ascertainable beneficiaries designated?

"e. Whether the use of a part of the income of said trust for the aid of any poor or worthy descendant of said Avery A. and Laura C. Stanton violates the rule against perpetuities because under the language of said trust its administration can continue longer than the maximum period permitted under the said rule, of lives in being, at the commencement of the trust, and twenty-one years and nine months?

"f. Whether said trust is invalid because of the difficulty and inconvenience of determining the time of the termination of said trust as provided in Article Eighth?

"g. Are the remainders over to the Voluntown Baptist Church and the Congregational Church of Ekonk, contained in said Article Eighth vested?

"h. Are said remainders over invalid because they violate the rule against perpetuities as to the time of vesting or because the time the beneficiaries can take possession is to be determined by a preceding void provision in said Article Eighth?

"i. If the trust created in said Article Seventh is invalid, and the said rest and residue referred to in said Article is intestate estate, will the said Clarence Ralph share in the distribution thereof as an heir at law of said Benjamin G. Stanton by reason of the provision contained in the Second paragraph of said Article Seventh?"

1091, § 1592. The substantial question is whether the paragraph also gives to him the notes evidencing the indebtedness of the corporation to the testator. The answer to this depends upon what the testator meant by the expression "all the interest that I may have ... in the Sterling Manufacturing Company." Here again all the interested parties concede that, although when the will was drawn the testator must have been referring to his interest in the partnership, we are, in construing the will, to treat this bequest as though it referred to his interest in the corporation.

A similar question was before us in *Riverside Trust Co.* v. *Rogers,* 89 Conn. 690, 96 A. 180. We held that a bequest of "all interest which I may have in" a named corporation did not carry with it the indebtedness of the corporation to the testator, saying (p. 696): " 'An interest in a company' is not appropriate language with which to describe all obligations against the company which the testator might have. In this connection it means the right of property or share which the testator had in this company. This was evidenced by his certificate or certificates for certain shares of the stock of the company. While he used the words 'interest' and 'shares,' he intended in the use of each word the same thing,—to include his part or portion of the company." Ralph attempts to distinguish that case from the present on the ground that when the will before us was made the testator was obviously referring to an interest in a partnership and not a corporation. There is, however, no essential difference between a man's interest in a partnership and his interest in a corporation. His interest in a partnership, as in a corporation, is his interest in the net worth of the concern. It is his share of the capital and surplus. It does not include

any indebtedness which the concern may owe him. It is his share of the assets of the concern over and above all of its indebtedness. This is the common meaning of "interest in a company," and there is nothing either in the context of the will now before us or the circumstances attendant upon its execution to indicate that the testator used the word interest in any other sense. The fifth paragraph of the will does not bequeath to Ralph the indebtedness of the company to the testator.

Questions (b) and (c) may be considered together, and they will be answered on the basis of our conclusion that Ralph is entitled to the stock, even though we also concluded that he is not entitled to the notes. The gist of the questions is whether the conditions imposed upon the bequest violate the rule against perpetuities. These conditions are that Ralph "shall pay to [the testator's] estate" one-third of the net yearly income of the corporation and, upon its sale or liquidation, one-third of the sale price or the proceeds of liquidation.

The will bequeaths the interest in the company to Ralph "to be his absolutely." It is a sound rule of construction that an express and positive devise or bequest in fee cannot be cut down to an inferior estate by a subsequent clause in the will unless that is equally express and positive. *Fanning* v. *Main,* 77 Conn. 94, 99, 58 A. 472; *Hull* v. *Hull,* 101 Conn. 481, 486, 126 A. 699; *Peyton* v. *Wehrhane,* 125 Conn. 420, 426, 6 A.2d 313. In the paragraph of the will now under consideration, however, the testator has clearly expressed the intent of limiting to some extent the absolute estate in the stock given to Ralph by the imposition of so-called conditions upon his enjoyment of that estate. The only questions are just what the limitation is and whether it is valid.

In view of the fact that the paragraph speaks of the bequest as being "in consideration" of Ralph's assuming an obligation, and in the light of all the attendant circumstances, it must be concluded that the testator did not intend to impose conditions in the technical sense upon Ralph's ownership of the interest in the business. He did not intend that if Ralph failed to comply with the requirements imposed he should forfeit the bequest. This is evident from the phrasing of the paragraph, in that it neither provides for a forfeiture nor in terms imposes any burden or lien upon the interest itself but rather provides that "he [Ralph] shall pay to my estate. . . ." The obligation to make the payments is one which is imposed on Ralph personally. See *Bishop* v. *Howarth,* 59 Conn. 455, 468, 22 A. 432; *Guthrie* v. *Wheeler,* 51 Conn. 207, 210.

This interpretation is fortified if it is borne in mind that at the time the will was drawn the company was a partnership. It was an interest in a partnership which the testator thought he was bequeathing. The effect of the bequest might well have been believed by the testator to permit a continuance of the partnership after his own death. He probably believed, however, that the "company" would have to terminate not later than the time of Ralph's death. Either the business would have been sold before that time or it would have to be liquidated as of that time. Accordingly, when the testator required Ralph to make payments until the company should be sold or liquidated, he contemplated that either of those events would necessarily occur not later than the time of Ralph's death. The fact that the partnership has since been converted into a corporation should not alter the will of the testator concerning his interest in the company.

The obligation which Ralph will assume upon acceptance of the bequest is a personal obligation to pay to the testator's estate one-third of the net yearly income from the operation of the company. This obligation will continue until the corporation (or Ralph's stock therein) is sold or until the corporation is liquidated. If neither of these events has happened prior to Ralph's death, his death, for the purposes of the fifth paragraph of the will, should be treated as the liquidation of the company. It follows that the obligation to be assumed by Ralph must be fully fixed during his lifetime, and therefore the benefits created by the fifth paragraph in favor of the testator's residuary estate do not violate the rule against perpetuities. The so-called conditions imposed in the fifth paragraph of the will are valid.

The remaining questions propounded relate to the seventh and eighth paragraphs of the will. They may all be resolved by a determination of the question whether the provisions of paragraph seventh violate either the rule against perpetuities or the rule against restraints on alienation. By that paragraph the testator left to trustees all of his residuary estate in trust to use the net income for the maintenance of the Stanton homestead, "it being my desire that this property shall be kept in good condition as a memorial to my said father and mother and for the benefit of their descendants as long as there shall be any such descendants living." He also provided that the fund may be used for the aid of any poor and worthy descendant of his parents who may need assistance. By the eighth paragraph he directed that upon the death of the last descendant of his father and mother the trust should terminate and the fund remaining be paid over to two churches.

It is elementary that a bequest will violate the rule against perpetuities and therefore be invalid unless it vests within a life or lives in being and twenty-one years and nine months thereafter. It is also well established that a restraint on alienation of property is invalid if it is attempted to be imposed for longer than the same period. *Alexander* v. *House*, 133 Conn. 725, 727, 54 A.2d 510. Neither rule applies to a charitable trust, but clearly paragraph seventh does not set up such a trust even though it provides for the relief of poor relatives and for the maintenance of the Stanton homestead. *Eliot's Appeal*, 74 Conn. 586, 606, 51 A. 558; Restatement, 2 Trusts § 375; *Bartlett, Petitioner*, 163 Mass. 509, 512, 40 N.E. 899; 3 Scott, Trusts, p. 2034.

In the case of a trust it is the time of the vesting of the beneficial interests which is determinative of the question whether the rule against perpetuities is violated, not the time of the vesting of title in the trustee. *Bates* v. *Spooner*, 75 Conn. 501, 505, 54 A. 305. Under the trust in question, it is the "descendants" of the testator's father and mother who are the beneficiaries. Whether the beneficial interest is to vest in them within a life or lives in being and twenty-one years thereafter turns on the question what persons the testator meant when he used the word "descendants." Did he mean the descendants of his mother and father to all generations or did he mean the descendants of his mother and father who were living at the time the will became operative? If he meant the former, obviously the bequest would violate the rule. If he meant the latter, the bequest does not violate the rule because then the beneficial interest in the descendants as well as the remainder over to the churches would vest as of the date of the testator's death.

It is true that in common usage the word "descendants" connotes more than immediate issue. It means issue to an infinite degree. *Pease* v. *Cornell,* 84 Conn. 391, 395, 80 A. 86. It is also true that ordinarily it is to be presumed that a testator has used such a word in its usual sense. *Greenwich Trust Co.* v. *Shively,* 110 Conn. 117, 124, 147 A. 367. If, however, the context of the will or the circumstances attendant upon its execution indicate that such a word was used by the testator in a more restrictive sense, the will will be so construed. *Union & New Haven Trust Co.* v. *Sherwood,* 110 Conn. 150, 159, 147 A. 562; *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 66, 112 A. 689; *Hoadley* v. *Beardsley,* 89 Conn. 270, 277, 93 A. 535. Furthermore, "[a] construction of a will which invalidates a bequest as an illegal perpetuity is to be avoided if the language used is fairly open to an interpretation which would make the gift valid." *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 355, 99 A.2d 224; *Bridgeport-City Trust Co.* v. *Alling,* 125 Conn. 599, 601, 7 A.2d 833; *White* v. *Smith,* 87 Conn. 663, 673, 89 A. 272; *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 A. 645; *St. John* v. *Dann,* 66 Conn. 401, 405, 34 A. 110.

It is extremely unlikely that the testator in the present case intended that the trust in question would continue in perpetuity. He certainly could not have contemplated that the dwelling house and other buildings located on the homestead would stand forever. Moreover, he did limit the corpus of the trust over to the churches upon the death of the last descendant. It was practically certain that descendants of his father and mother, if by that is meant descendants without restriction, would never die out. If, therefore, he used the term in that sense, it was foolish to provide that on the death of the

last descendant the property should go to the churches.

On the other hand, there is every indication that his intention was to benefit only the descendants of his father and mother who would be alive at the time of his death. They were the people whom he knew and who were the natural objects of his bounty. It is of considerable significance that he directed that Ralph be treated as though he were one of the descendants. He did not include in that direction any of the descendants of Ralph. If he had intended that the issue of the living descendants of his parents were to be included as beneficiaries he would also have included the issue of Ralph. That he did not undertake to specify the living descendants by name is quite understandable in view of the fact that they were more than fifteen in number.

On the whole, therefore, we conclude that by his use of the word "descendants" the testator meant only the descendants of his parents who were living at the time the will became operative. See *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 355, 99 A.2d 224; *Bronson* v. *Strouse,* 57 Conn. 147, 151, 17 A. 699. It follows that the beneficial interests under the trust vested at the time of the testator's death in the descendants of his father and mother who were living at that time and also in the churches. The bequest, therefore, did not violate the rule against perpetuities. Nor did it offend the rule against restraints on alienation.

Question (a) is answered in the affirmative as to the shares of stock but in the negative as to the notes; the answer to questions (b) and (c) is that the conditions imposed are valid, not as conditions, but as obligations resting upon Ralph personally; the answer to each of questions (d), (e), (f) and (h) is

"No"; the answer to question (g) is "Yes"; it is not necessary to answer question (i).

No costs in this court will be taxed in favor of any party.

In this opinion the other judges concurred.