CHARLES CARROLL, Chief Judge.
This appeal is from a judgment of the circuit court for Dade County entered on a petition of testamentary trustees for construction of certain provisions of a trust created by the will (and codicil) of Francesco Balzebre, deceased.
The will was made on June 4, 1953. Certain provisions thereof were changed by a codicil made on December 29, 1956. The *50 testator died on June 9, 1957. His widow died on May 12, 1966.
Under the terms of the testator’s will and codicil, in event his wife survived him, all of his property was devised and bequeathed to three named trustees (the testator’s daughter Phyllis, his son Anthony and his attorney Harold Skolnick) [1] to be held in a trust designated as “Trust A.”
Included in the property of the testator, at the time that the will and codicil were made, was all of the outstanding stock of Allied Lumber Company, a corporation, and fifty percent of the outstanding stock of B & C Corp. The latter corporation owned the land on which the lumber company business was operated, and its income consisted of the rent it received from the lumber company. The codicil directed the trustees to maintain intact the testator’s stock in those corporations.
It was provided that during the lifetime of the widow she should receive the net income from the trust, and, in the discretion of the trustees, so much of the principal of the trust, in addition to the income, as should be necessary for her needs or expenses.
The trustees’ petition for construction concerned provisions relating to distributions to be made from Trust “A”' following the death of the widow. In this regard it was provided in the codicil that the trustees should distribute to the testator’s son Anthony “all that portion of the principal of Trust ‘A’ pertaining to my stock holdings, or ownership, in the Allied Lumber Company, being all my shares of stock in said corporation or successor corporations;” and “all that portion of the principal of Trust ‘A’ pertaining to my stock holdings, or ownership, in the B & C Corp., being all my shares of stock in said B & C Corp., or successor corporations,” adding: “It is my intention through the specific bequests set forth in these paragraphs 6(a) (i) and 6(a) (ii) to devise and bequeath to my son Anthony F. Balzebre as complete ownership and control over the business of the Allied Lumber Company, including complete stock ownership, as it is possible for me to give to him as well as my complete interest in the B & C Corp., which corporation owns the land and buildings upon which the business of Allied Lumber Company is situate. My son Anthony has, through his sole efforts, guided that business to whatever success it has achieved, and I anticipate that my son Anthony will have, during the period of the existence of the trust for his mother, Eva Balzebre, provided through said business ample earnings for said Trust.”
Following the direction for transfer of those stock holdings to Anthony (after death of the widow), it was provided that the remaining principal of Trust “A” should be divided into two equal or substantially equal parts, one part to be held by the trustees in a trust to be designated as the Phyllis trust and the other part to be held by the trustees in a trust to be designated as the Anthony trust, with provision for payment of the incomes therefrom to the respective beneficiaries. It was further provided that if the income therefrom was insufficient to pay each beneficiary $150 per month, the difference could be paid from the principal.
Twenty-five days prior to the death of the testator, he sold the stock of Allied Lumber Company to his son Anthony for a consideration of $50,000, payable over a period of years in installments of $5,000 with interest, evidenced by a promissory note, with the stock pledged as security.
In the trial court Anthony contended for a construction that the provision in the codicil for transfer to him, following the death of the widow, of the stock of Allied Lumber Company should operate to cancel his $50,000 note obligation given in payment for the stock purchased by him from the testator. The trial court ruled *51 otherwise, and Anthony has reasserted that position here on appeal. In denying the contention below, the trial court ruled that the sale by the testator of the stock of Allied Lumber Company had resulted in an ademption with respect thereto. In so holding the trial judge was eminently correct. See Eisenshenck v. Fowler, Fla.1955, 82 So.2d 876; 35 Fla.Jur., Wills § 362.
It is to be observed that if Anthony had not purchased the stock of Allied Lumber Company from his father prior to the latter’s death, under the terms of the will he would have acquired it without cost at some future time, but would have been deprived of the full control of the corporation and of the right to receive the income therefrom as the sole stockholder, during the indefinite future period of the life of the widow. Instead, he chose to gain immediate control of the corporation and to become entitled presently to receive the income therefrom by purchasing the stock of Allied Lumber Company from the testator. Partial payment of principal with interest was made on the note by Anthony after the testator’s death and during the lifetime of the widow. The purchase of the stock of Allied Lumber Company by Anthony resulted in that valuable asset being eliminated from the property of the testator which became Trust “A”, the income of which was made payable to the widow during her lifetime, and in the substitution therefor of his note or obligation for $50,000.
The records of B & C Corp. revealed that at the time of the death of the testator that corporation was indebted to him for $29,655.64 which he had advanced to it. The trial court rejected a contention of Anthony that the provision in the codicil for transfer to him of the testator’s B & C Corp. stock should be construed to include and carry with it the obligation of the corporation to the testator for the said sum of $29,655.64. Anthony contends here that the trial court committed error in so holding. We cannot agree. A bequest of corporate stock does not include an indebtedness owed by the corporation to the testator.
In Stanton v. Stanton, 140 Conn. 504, 101 A.2d 789, 792, the language of a bequest was: “all the interest I may have * * * in the Sterling Manufacturing Company.” There the court rejected a contention that such bequest should be construed to include certain indebtednesses owed by the corporation to the testator.
A similar result was reached in Riverside Trust Co. v. Rogers, 89 Conn. 690, 96 A. 180, 182, in which the language was: “all interest which I may have in said * * * Company and its shares.” The same was held in Major v. Major, 106 Ind.App. 90, 15 N.E.2d 754, 757, where the language of the will was: “whatever stock or interest I may own at the time of my death in Major Brothers Packing Company.” See also 96 C.J.S. Wills ,§ 780, p. 192.
The language of the codicil in this case was more definite than that in the cited cases. Here, after stating “all that portion of the principal of Trust ‘A’ pertaining to my stock holdings or ownership, in the B & C Corp.,” the bequest was narrowed to the corporate stock by addition of the language: “being all my shares of stock in said B & C Corp., or successor corporations.” From that wording of the codicil it seems clear that the bequest was of the fifty percent stock interest owned by the testator in B & C Corp., with no intention expressed or shown to include other assets of the decedent, such as indebtednesses to him from the corporation. Instead, the contrary intention is revealed by the circumstance that following those provisions for transfer to Anthony of the stock of the two corporations, the codicil provided that the remainder of the principal of trust "A” should be used to create the two additional trusts referred to above, for the benefit of the daughter Phyllis and of the son Anthony. The obligation in question from B & C Corp. to the testator constituted a part of the property held by the testator, in addition to stock of that corporation, which *52 by the terms of the codicil would become part of the principal of those additional trusts.
In 1965 the lumber company business was moved from the property of B & C Corp. to another location, and the B & C Corp. property was leased to Miami Marine, Inc., with an option in the lessee to purchase the property for $60,000. After the widow died on May 12, 1966, and Anthony thereby had become entitled to the testator’s fifty percent of the stock of B & C Corp. under the provisions of the codicil, Miami Marine, Inc. exercised its option and purchased the B & C property in 1967, and thereupon B & C Corp. was dissolved. The amount of the net assets of the dissolved corporation which were al-locable to the testator’s stock of B & C Corp. held by the trustees was $13,393.26. The trial court held that Anthony, as the party entitled to that fifty percent stock ownership, should receive the said sum of $13,393.26. By a cross assignment, Phyllis Pelle challenged the correctness of that ruling. We have considered the arguments advanced in support of that cross assignment, and find them to be without merit.
Affirmed.

. The reason or circumstance for the change in trustees is not disclosed on the record.